[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 12, 2006
THOMAS K. KAHN
CLERK

No. 03-16259

_____

D. C. Docket No. 02-01103-CV-T-26MSS

JEFFREY LEE ATWATER,

Petitioner-Appellant,

versus

JAMES V. CROSBY, JR., Secretary
Florida Department of Corrections,
CHARLIE CRIST, Attorney General
of the State of Florida,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 12, 2006)**

Before TJOFLAT, BLACK and WILSON, Circuit Judges.

WILSON, Circuit Judge:

Jeffrey Lee Atwater appeals the district court's denial of his 28 U.S.C. § 2254 petition challenging his death sentence. We granted a certificate of appealability to consider the following four claims: (1) the state violated Atwater's rights by striking the sole black juror from the venire; (2) trial counsel were ineffective for conceding guilt on a lesser included offense; (3) trial counsel were ineffective for failing to present mitigation evidence at the penalty phase of Atwater's trial; and (4) trial counsel were ineffective for failing to call Atwater to testify at trial. After review and oral argument, we affirm Atwater's death sentence.

## I. Procedural History

On September 7, 1989, Jeffrey Atwater was indicted by a grand jury in Pinellas County, Florida, for the first degree murder and armed robbery of Kenneth Smith, his aunt's fiancé. At trial, he was convicted of first degree murder and robbery. The jury recommended death by a vote of eleven to one. The trial judge found three aggravating factors and no statutory mitigating factors, and Atwater was sentenced to death on June 25, 1990. On direct appeal, the Florida Supreme Court affirmed Atwater's convictions and death sentence. *Atwater v. State* (*Atwater I*), 626 So. 2d 1325 (Fla. 1993) (per curiam).

Atwater then filed a petition for writ of certiorari in the United States Supreme Court, which was denied. *Atwater v. State*, 511 U.S. 1046, 114 S. Ct. 1578, 128 L. Ed. 2d 221 (1994). Pursuant to Florida Rule of Criminal Procedure 3.850, Atwater filed a motion for post-conviction relief in the state trial court, raising 24 claims. The trial court denied an evidentiary hearing on the penalty phase issues and granted an evidentiary hearing on some of the guilt phase issues. On January 5, 1999, the trial court entered an order denying all claims for relief. Atwater appealed, and the Florida Supreme Court affirmed the trial court's denial of post-conviction relief. *Atwater v. State* (*Atwater II*), 788 So. 2d 223 (Fla. 2001) (per curiam).

Atwater then filed a timely original petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in United States District Court. The district court administratively closed the case from August 23, 2002, until January 13, 2003, pending decisions in *Bottoson v. Moore*, 833 So. 2d 693 (Fla. 2002) (per curiam) and *King v. Moore*, 831 So. 2d 143 (Fla. 2002) (per curiam), in light of *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002). After re-opening the case, the district court denied Atwater's request for an evidentiary hearing and summarily denied the habeas petition in its entirety by Order dated October 21, 2003.

3

Atwater then filed a number of post-judgment pleadings in the district court, including an application for a certificate of appealability and a motion to hold proceedings in abeyance pending exhaustion because he had filed a successive motion for post-conviction relief in the trial court asserting claims for relief under *Ring* and *Nixon v. State*, 857 So. 2d 172 (Fla. 2003), *rev'd sub nom. Florida v. Nixon*, 543 U.S. 175, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004). The district court denied all relief on December 17, 2003.

We granted Atwater's renewed motion to hold proceedings in abeyance on March 9, 2004. After the state trial court and the Florida Supreme Court denied Atwater's motion for post-conviction relief based on *Ring* and *Nixon*, we reinstated the case to active status. We then granted Atwater's renewed application for a certificate of appealability with regard to the four issues outlined above.

## II. Facts

The following recitation of facts is taken from the Florida Supreme Court's opinion affirming Atwater's conviction and sentence on direct appeal:

> On August 11, 1989, Atwater entered the John Knox Apartments in St. Petersburg, Florida, to see Ken Smith, the victim in this case. Upon entering the apartment building, Atwater proceeded to Smith's room where he remained for about twenty minutes. After Atwater left, Smith's body was discovered in the room. Smith was dead and his money was missing. Atwater told several people that he had killed Smith.

4

. . . .

. . . [T]he State presented testimony showing that Atwater had obtained money from Smith on previous occasions, that Smith feared Atwater, and that, on the day of the murder, Smith told a friend that he was not going to give Atwater any more money. Further, there was evidence that Smith had cash in his trousers pocket shortly before the killing. When the body was found, the pockets were turned out and the only money found in the room was a few pennies on the floor.

. . . .

The victim in this case was stabbed at least forty times. The sentencing order recites:

> The Court has carefully reviewed the evidence and finds, in fact, that [the heinous, atrocious, or cruel aggravating] factor does exist beyond a reasonable doubt. In reaching this conclusion, the Court has considered evidence that the Defendant killed his sixty-four (64) year old victim by inflicting nine (9) stab wounds to the back, eleven (11) incised wounds to the face, six (6) incised wounds to the neck, one (1) incised wound to the left ear, one (1) incised wound to the right shoulder, one (1) incised wound to the right thumb, nine (9) stab wounds to the chest area including heart and lungs, two (2) superficial puncture wounds to the abdomen, a scalp laceration on the back of the head as a result of blunt trauma, multiple abrasions and contusions about the body, blunt trauma resulting from fractured thyroid cartilage, and blunt trauma to the chest causing multiple rib fractures. The medical examiner . . . testified that these injuries occurred while Kenneth Smith was alive, and that death or unconsciousness would not have occurred until one to two minutes after the most serious, life threatening wounds to the heart were inflicted.

> . . . The evidence also shows that the stab wounds were more

5

likely inflicted in the order of increasing severity and that the fatal wounds to the heart were probably inflicted last. Additionally, Atwater beat his victim prior to or during the stabbing.

*Atwater I*, 626 So. 2d at 1327-29.

### III. Standard of Review

Because Atwater filed his petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this case is governed by 28 U.S.C. § 2254 as modified by the Act. *Lindh v. Murphy*, 521 U.S. 320, 326, 117 S. Ct. 2059, 2063, 138 L. Ed. 2d 481 (1997). According to § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." As to claims that the state court adjudicated on the merits, § 2254(d)(1) restricts issuance of habeas corpus to those that "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Section 2254(d)(2) allows a petition for writ of habeas corpus to be granted when the state court determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

"A state-court decision will certainly be contrary to our clearly established

precedent if the state court applies a rule that contradicts the governing law set forth in our cases. " *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519, 146 L. Ed. 2d 389 (2000). "A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Id*. at 406, 120 S. Ct. at 1519-20.

"[A]n unreasonable application of federal law is different from an incorrect or erroneous application of federal law." *Id*. at 412, 120 S. Ct. at 1523 (emphasis omitted). "[C]learly established Federal law . . . refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413, 120 S. Ct. at 1523.

With these principles in mind, we turn to Atwater's claims.

## IV. *Batson* Claim

At trial, Atwater objected to the state's use of a peremptory challenge to remove Antoinette Ellison, the only black member of the jury venire, based on the Supreme Court's decision in *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90

L. Ed. 2d 69 (1986).  The *Batson* challenge was confined to the following

colloquy:

> [DEFENSE COUNSEL]:  Judge, at this time the Defense would ask the State to state the reason as to why they're striking the sole black juror in this panel.

> [PROSECUTION]:  I would like to state, Judge, under the most recent Supreme Court case that a white defendant does not have standing to challenge – or does not have standing to assert that we are exercising our challenges in a racially biased method.

> THE COURT:  I'd like to hear, in an abundance of caution, I'd like to hear a reason.

> [PROSECUTION]:  In an abundance of caution, if you would recall back to her demeanor when I was asking her the questions when I asked about the death penalty, she very much clammed up to a shell.  Her voice lowered to where she could hardly speak.  I think that she has reservations about a juror – you know, based on being a juror in this case.

> [DEFENSE COUNSEL]:  Judge, I think that she clearly and unequivocally, I think that the court was right on point when he asked [the prosecution] to restate his question to make sure the juror understood the question.  I think when [the prosecution] restated it in a fashion that she was capable of understanding, she did answer the question.

> Again, I would suggest to the Court that the only reason the State is striking Ms. Ellison is because she is the sole black person on the jury panel.

> THE COURT:  The Court, in observing that particular juror, thought that she did respond with difficultly to the questions that were asked.  Based upon the answers she gave and the demeanor, I believe the State's peremptory challenge will be well-taken.

[DEFENSE COUNSEL]: Just for the preservation of my record, we would move for a mistrial based on the fact that the State has stricken the sole black person on the jury panel and deny [sic] my client a fair trial by a jury of his peers.

THE COURT: Thank you. Any additional challenges of this panel?

[DEFENSE COUNSEL]: No, your Honor.

[PROSECUTION]: No further challenges at this time.

Transcript of Record on Appeal at 851-53, *Florida v. Atwater*, No. CRC 89-13299.

In his habeas petition, Atwater claims that the trial court's application of *Batson* was unreasonable because other non-black jurors expressed reluctance regarding the death penalty, while Ellison said that she would not refuse to consider the death penalty or allow her views about the death penalty to affect her decision on guilt or innocence. Thus, Atwater asserts that a comparative juror analysis compels the conclusion that Ellison was struck because of her race. This comparative juror argument was not made at the time that the *Batson* challenge was made at the trial court. Atwater also contends that the state courts failed to address the third step of *Batson* in evaluating his claim, and therefore, there is no determination to which this Court must defer.

The state argues that the district court properly denied relief because Atwater failed to meet his burden of rebutting the presumption of correctness afforded state

9

court factual findings or establishing that the state court's legal conclusions were an unreasonable application of, or contrary to, federal law. The state maintains that based on the combination of Ellison's answers and her demeanor, the state courts did not err in applying *Batson*. The state further claims that the state courts' treatment of Atwater's *Batson* claim was adequate.

In *Batson*, the Supreme Court articulated a three-part test to evaluate equal protection challenges to a prosecutor's use of peremptory challenges. The initial burden of establishing a prima facie case of discrimination rests with the defendant. *Batson*, 476 U.S. at 96, 106 S. Ct. at 1723. In determining whether the defendant has met this burden, the court should consider "the totality of relevant facts" about a prosecutor's conduct. *Id*.

After the defendant makes a prima facie showing, the state must come forward with a race neutral explanation for challenging a black juror that is related to the particular case to be tried. *Id*. at 97, 98, 106 S. Ct. at 1723, 1724. The issue in this step of *Batson* is the facial validity of the reason given by the prosecutor; therefore, the reason will be deemed race neutral unless a discriminatory intent inheres in the prosecutor's explanation. *Hernandez v. New York*, 500 U.S. 352, 360, 111 S. Ct. 1859, 1866, 114 L. Ed. 2d 395 (1991) (plurality opinion). Although there are a number of bases upon which a prosecutor may desire to strike

a juror not excusable for cause, at this step, the prosecutor is required to provide a "'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges." *Id*. at 98 n.20, 106 S. Ct. at 1724 n.20 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L. Ed. 2d 207 (1981)). A "legitimate reason" is not required to make sense, be persuasive or even plausible; it need only be one that does not deny equal protection. *Purkett v. Elem*, 514 U.S. 765, 768-69, 115 S. Ct. 1769, 1771, 131 L. Ed. 2d 834 (1995) (per curiam). Nor is it not necessary that such a reason rise to the level supporting a challenge for cause, although general assertions, including assumptions or intuitive judgments that a black juror will be partial to a defendant, are insufficient. *Batson*, 476 U.S. at 97, 106 S. Ct. at 1723. Also unacceptable are mere denials of discriminatory motive or affirmations of good faith in exercising the strike. *Id*. at 98, 106 S. Ct. at 1723-24.

Once the prosecutor articulates a race neutral reason for the strike, the third step of *Batson* requires the trial court to determine if the defendant has established purposeful discrimination. *Batson*, 476 U.S. at 98, 106 S. Ct. at 1724. At this stage, the persuasiveness of the prosecutor's justification for his peremptory strike is the critical issue. *Miller-El v. Cockrell* (*Miller-El I*), 537 U.S. 322, 338-39, 123 S. Ct. 1029, 1040 154 L. Ed. 2d 931 (2003). "[I]mplausible or fantastic

11

justifications" may be found to be pretextual, and in these cases, the question is whether the prosecutor's race neutral explanations are credible. *Id*. at 339, 123 S. Ct. at 1040 (quoting *Purkett*, 514 U.S. at 768, 115 S. Ct. at 1769). In assessing the credibility of the prosecutor's stated reasons, the court may look to, among other things, the prosecutor's demeanor; the reasonableness or the improbability of the explanations; and whether the reason is grounded in acceptable trial strategy. *Id*. Likewise, "[i]f a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step." *Miller-El v. Dretke* (*Miller-El II*), 545 U.S. 231, ___, 125 S. Ct. 2317, 2325, 162 L. Ed. 2d 196 (2005). We emphasize that "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett*, 514 U.S. at 768, 115 S. Ct. at 1771.

Here, the Florida Supreme Court engaged in the following analysis of Atwater's *Batson* claim:

> Atwater claims that the trial court erred in allowing the State to exercise a peremptory challenge removing the sole black person in the venire. We disagree. Upon Atwater's objection to the peremptory challenge, the trial court inquired as to the State's reasons. The record reflects that the court's inquiry was adequate and the record supports the State's explanation for exercising the challenge. The court expressly noted that the prospective juror had difficulty answering the questions put to her and her demeanor indicated that she was hesitant

12

and uncomfortable regarding the death penalty. This is a valid, race-neutral reason for exercising a peremptory challenge, and the court did not abuse its discretion in upholding the challenge.

*Atwater I*, 626 So. 2d at 1327.

From this discussion, it appears that the Florida Supreme Court improperly condensed the second and third steps of *Batson*. As stated above, in the second step of *Batson*, a prosecutor need only offer a race neutral reason for the strike, no matter how silly or implausible. It is not until the third step in the analysis that the persuasiveness of the prosecutor's proferred reasons becomes relevant in determining whether the defendant has established purposeful discrimination. 476 U.S. at 98, 106 S. Ct. at 1724. The Supreme Court reiterated the importance of addressing each distinct step of *Batson* in *Purkett*, 514 U.S. at 768, 115 S. Ct. at 1771 (concluding that the Court of Appeals incorrectly applied *Batson* by combining its second and third steps into one), and subsequently in *Miller-El II*, 545 U.S. at ___, 125 S. Ct. at 2325 (stating that "side-by-side comparisons of some black venire panelists who were struck and white panelists allowed to serve" are relevant considerations at the third step of *Batson*). We strongly caution courts that the failure to address each of *Batson*'s steps creates the risk of serious constitutional error. *See Hightower v. Schofield*, 365 F.3d 1008, 1041-44 (11th Cir. 2004) (Wilson, J., concurring), *vacated*, ___ U.S. ___, 125 S. Ct. 2929, 152 L.

13

Ed. 2d 863 (2005) (remanding for further consideration in light of *Miller-El II*).

However, given the great deference afforded the determinations of state courts under § 2254, we cannot reach the conclusion that the trial court or the Florida Supreme Court unreasonably applied *Batson* in this case. Here, the trial court went beyond a mere finding that the state articulated a race neutral reason for the strike – the trial court engaged in some evaluation of the prosecutor's reasons for the strike and determined that the race neutral reason given for striking venire member Ellison was supportable. Therefore, the third step of the *Batson* analysis was touched. The trial judge upheld the peremptory strike after agreeing that Ellison exhibited some difficulty with her responses to the prosecution question. The defendant then failed to follow through, or come forward with any concrete pretext evidence or argument. "When an allegation of pretext is raised, the defendant bears the burden of convincing the district court that the proferred reasons are pretextual by introducing evidence of comparability." *United States v. Alston*, 895 F.2d 1362, 1374 (11th Cir. 1990) (Hatchett, J., concurring). No such effort was made in this case. Although Atwater presented comparative evidence of discrimination to the post-conviction courts and in his petition for habeas relief, conspicuously absent from the trial record is some argument or evidence of comparability at the time that the *Batson* challenge was made to refute the

14

prosecutor's reason for the strike. Here, then, "[t]he lesson to claimants of *Batson* violations and prosecutors is that comparisons must be made between the black jurors removed from jury service and the white jurors remaining for service." *Id*. at 1374-75. Without this comparison evidence, Atwater's *Batson* claim fails.

## V. Ineffective Assistance of Counsel

### A. Concession of Guilt on Lesser Included Offense

In his state post-conviction proceedings and on habeas review in district court, Atwater argued that his counsel was ineffective for telling the jury during closing argument that the evidence supported a finding of second degree murder. This claim was the subject of an evidentiary hearing in the state trial court, although the trial court did not resolve the factual dispute over whether Atwater's lawyers discussed this strategy with him. Instead, the trial court found that the concession of guilt was a "legitimate trial strategy even without the defendant's knowledge or consent." Order Den. Mot. Post-Conviction Relief, Jan. 5, 1999, citing *McNeal v. Wainwright*, 722 F.2d 674 (11th Cir. 1984) (per curiam). The Florida Supreme Court affirmed the denial of the Atwater's claim, finding that the trial court properly relied upon and applied *McNeal*. *Atwater II*, 788 So. 2d at 230-31.

Atwater asserts that his attorneys failed to discuss trial strategy with him and

15

that their decision to concede guilt on second degree manslaughter deprived him of the right to hold the prosecution to its burden of proof beyond a reasonable doubt. In *Florida v. Nixon*, the Supreme Court stated that an attorney must "consult with the client regarding important decisions," including the decision to plead guilty. 543 U.S. at 187, 125 S. Ct. at 560 (internal quotation marks omitted). Therefore, Atwater asserts that his counsel were required to obtain his consent before conceding second degree murder in their closing argument, which in effect constituted a guilty plea. Further, Atwater contends that this case is distinguishable from *McNeal* because instead of arguing that the state had not proven the element of premeditation, his counsel forcefully argued in favor of a conviction for second degree murder.

The state responds that the Florida Supreme Court was correct in distinguishing *Nixon* from the instant case, as the trial strategy that Atwater's counsel employed did not amount to a guilty plea but rather was a strategy intended to save Atwater's life. *See Atwater*, 788 So. 2d at 232. Additionally, as the state courts recognized, Atwater is unable to demonstrate that his counsel were ineffective because he is unable to satisfy the *Strickland* standard.

In order to succeed on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that this

16

deficiency prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 180 L. Ed. 2d 674 (1984). "[T]he question is whether there is a reasonable probability that, absent the errors, the sentencer – including an appellate court, to the extent it independently reweighs the evidence – would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id*. at 695, 104 S. Ct. at 2069. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690-91, 104 S. Ct. at 2066. Given our constraints under § 2254, we must find that the Florida Supreme Court's decision was contrary to, or an unreasonable application of, *Strickland* in order to grant Atwater's petition.

The Florida Supreme Court found that Atwater failed to show either deficient performance or prejudice. With regard to the issue of whether counsel's performance was deficient, it concluded that Atwater's counsel subjected the state's case to "a meaningful adversarial testing," conducting "meaningful cross-examination of fifteen of [the state's twenty] witnesses." *Atwater II*, 788 So. 2d at 231. According to the Florida Supreme Court,

17

[a]t no point during the opening statement or during any of the testimony did defense counsel concede Atwater's guilt. During the first part of defense counsel's closing argument, defense counsel argued that the State failed to prove robbery and therefore could not prove felony murder. Defense counsel stated in the first part of closing arguments that he would address premeditation after the State's closing argument. The State argued in closing argument that it had proven robbery and premeditation, and discussed the evidence presented which included: Atwater had threatened to kill Smith a week before; Smith was afraid of Atwater and hid from him; on the night of the murder Atwater signed in on the clerk's log at Smith's apartment building; Atwater exited approximately twenty minutes later and told the desk clerk that nobody answered the door; Atwater had blood on his shoes and pants that was not from Atwater himself; and Atwater told his aunt and cousin that he killed Smith and enjoyed it. In response, then, and in rebuttal closing argument, defense counsel addressed premeditation and argued that the evidence might support the lesser offense of second-degree murder, but there was nothing to support premeditation. In light of the overwhelming evidence of guilt presented by the State, which we acknowledged in our opinion on the direct appeal, defense counsel's argument was reasonable. . . . [D]efense counsel did subject the State's case to meaningful testing, and only after the State's case was presented and fully argued did defense counsel resort to making some concession – a trial strategy intended to save Atwater's life. Under the circumstances, this strategy was reasonable.

*Id.* at 231-32.

Additionally, at the state trial court evidentiary hearing, one of Atwater's trial lawyers testified that as an experienced attorney of seventeen years with five or six capital trials and over a hundred criminal trials, he did not believe Atwater had a chance at getting an acquittal, and his strategy was to save Atwater's life. Given these considerations, we cannot conclude that the Florida Supreme Court

18

unreasonably applied, or reached a decision contrary to, clearly established federal law. Therefore, Atwater is not entitled to habeas relief on this ground.

**B. Failure to Call Atwater to Testify**

Atwater also argues that his lawyers' failure to allow him to take the stand at trial violated the right of the accused to testify, as recognized in *Faretta v. California*, 422 U.S. 806, 820 n.15, 95 S. Ct. 2525, 2533 n.15, 45 L. Ed. 2d 562 (1975). Atwater claims that only a defendant may waive this right regardless of tactical considerations. *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc). He further notes that the post-conviction court acknowledged the factual dispute over whether Atwater's attorneys ever told him that he had the right to "overrule them" and testify but decided the issue on the prejudice prong of *Strickland* only. According to Atwater, the state court's conclusions conflict with the classification of an accused's decision to testify as personal to the defendant. *See id.*

The state first notes that this claim was found to be procedurally barred by the district court due to Atwater's failure to raise the claim in the Florida Supreme Court, a determination reviewed de novo. *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1345 (11th Cir. 2004), *cert. denied sub nom. Kelley v. Crosby*, ___ U.S. ___, 125 S. Ct. 2462, 162 L. Ed. 2d 906 (2005). Pursuant to state procedural rules,

19

abandonment of an issue results from submission of a brief without argument thereon in an appeal of an order denying relief after an evidentiary hearing. *See, e.g., Shere v. State*, 742 So. 2d 215, 217 n.6 (Fla. 1999) (per curiam). Because Atwater has not shown cause or prejudice to excuse the default, the state argues, he is unable to raise his claim now. Even if Atwater could show valid cause, which the state does not concede, he does not demonstrate actual prejudice in view of the overwhelming evidence of his guilt of first degree murder. The state alternatively contends that the state trial court properly found that Atwater was unable to show prejudice under *Strickland*.

Regarding the issue of procedural default, Atwater states that on appeal of post-conviction relief, the facts about whether counsel interfered with the defendant's right to testify were raised in connection with the claim about counsel's concession of guilt, although the two issues were not formatted as separate grounds for relief.

The Florida Supreme Court recognized that an evidentiary hearing was held on the issue of whether trial counsel prevented Atwater from testifying on his own behalf. *Atwater II*, 788 So. 2d at 227 n.2. However, Atwater did not raise the right-to-testify issue in his initial brief on appeal from the denial of his 3.850 motion in the Florida Supreme Court. *See id*. at 227-28. Although Atwater

20

asserted the issue in his reply brief, according to Florida law, it was too late. *See, e.g.*, *Shere*, 742 So. 2d at 217 n.6 (in Florida, an issue raised in an appellate brief which contains no argument is abandoned); *see also Gen. Mortgage Assoc., Inc. v. Campolo Realty & Mortgage Corp.*, 678 So. 2d 431, 431 (Fla. Dist. Ct. App. 1996) ("The fact that [an] issue was raised for the first time in the reply brief alone precludes our consideration of the matter."). It is well-settled that "if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . .[,] there is a procedural default for purposes of federal habeas . . . ." *Coleman v. Thompson*, 502 U.S. 722, 735 n.1, 111 S. Ct. 2546, 2557 n.1, 115 L. Ed. 2d 640 (1991). Because Atwater did not properly exhaust this claim in state court, this issue is defaulted.

This being the case, we may only consider the issue on appeal if the defendant shows both cause for noncompliance with the state rule and actual prejudice resulting from the alleged constitutional violation, or "if a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Smith v. Murray*, 477 U.S. 527, 533, 537, 106 S. Ct. 2661, 2665-66, 2668, 91 L. Ed. 2d 434 (1986). Here, Atwater has neither alleged nor shown cause and prejudice or actual innocence in order to excuse his default of the issue. He is

21

therefore barred from raising it now.

In any event, even if Atwater had properly preserved the issue for review, we cannot say that the state trial court's conclusion that he failed to meet the *Strickland* standard was unreasonable or contrary to federal law. The state trial court found that Atwater "failed to meet his burden to show how he was prejudiced by not testifying at his trial."[1] Order Den. Mot. Post-Conviction Relief, Jan. 5, 1999. It also found that "the trial record show[ed] that the defendant's first-person profession of innocence, when weighed against the substantial evidence to the contrary presented by the State, would not have changed the jury's verdict." *Id*. Considering the overwhelming evidence of Atwater's guilt, *see Atwater II*, 788 So. 2d at 231-32, the state trial court's finding that Atwater is unable to demonstrate prejudice as required by *Strickland* is neither an unreasonable application of, nor contrary to, federal law. *See Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."). Therefore, this claim lacks merit.

### C. Failure to Present Mitigation Evidence

Atwater makes several arguments in support of his contention that his trial counsel were ineffective for failing to present available mitigation evidence in the

---

[1] The Florida Supreme Court did not address this issue because it was not presented on appeal from the denial of Atwater's Rule 3.850 motion to vacate his conviction and sentence.

22

penalty phase of the trial. First, he claims the district court erred in denying Atwater's request for an evidentiary hearing. Second, he asserts that his counsel did not adequately prepare for the penalty phase of his trial. Third, he argues that his counsel's penalty phase presentation was prejudicially deficient. Finally, he contends that his counsel's failure to investigate and present available mitigation evidence prejudiced him.

As an initial matter, we address Atwater's argument that his requests for an evidentiary hearing on penalty phase ineffectiveness in both the state and federal courts were improperly denied. Atwater notes that the district court denied the request on the basis that, contrary to the due diligence requirement of 28 U.S.C. § 2254(e)(2), Atwater failed to apprise the state courts of the proferred testimony of two expert witnesses. However, according to Atwater, Florida law at that time did not require that a post-conviction movant allege the identities of the witnesses, the nature of their testimony, or their availability to testify. *Gaskin v. State*, 737 So. 2d 509, 514 n.10 (Fla. 1999) (per curiam), *receded from by Nelson v. State*, 875 So. 2d 579, 582-83 (Fla. 2004). Furthermore, Atwater says that the district court faulted him for not proffering Dr. Cowardin's testimony about adult attention deficit disorder ("ADD"), when the factual substance of the claim was presented and considered by the Florida Supreme Court even if Dr. Cowardin's name was not.

23

Therefore, Atwater claims that the district court erred in applying § 2254(e)(2).

The state responds that a district court's decision to deny an evidentiary hearing is reviewed for abuse of discretion, and an evidentiary hearing is not required "unless [a petitioner] can demonstrate that his factual allegations, if proven, would indicate that the Florida Supreme Court acted contrary to, or unreasonably applied, clearly established federal law." *Breedlove v. Moore*, 279 F.3d 952, 959, 961 (11th Cir. 2002). As Atwater observes, his claim was denied on due diligence grounds. However, the state argues that the district court also found that Atwater's claim failed because he did not meet the prejudice prong of *Strickland* and because he failed to demonstrate that the Florida Supreme Court acted in a way that was contrary to, or unreasonably applied, clearly established federal law when it rejected Atwater's ineffective assistance claim.

As the state points out, we review the district court's denial of an evidentiary hearing for abuse of discretion. *Id*. at 959. The AEDPA provides the standards governing the power of federal courts to order an evidentiary hearing in habeas cases. Section 2254(e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
> (A) the claim relies on –

24

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

In this case, Atwater sought an evidentiary hearing regarding this claim at the state post-conviction court and from the Florida Supreme Court. The state courts denied his requests and as a result, Atwater was unable to develop a factual basis for his claim in state court. In light of this fact, § 2254(e)(2) does not preclude an evidentiary hearing in Atwater's case. *See Breedlove*, 279 F.3d at 960.

Even so, "it would still be appropriate to deny [Atwater] an evidentiary hearing if such a hearing would not assist in the resolution of his claim." *Id*. (citing *Bolender v. Singletary*, 16 F.3d 1547, 1555 n.9 (11th Cir.1994)). "[I]t is well established that a habeas petitioner is entitled to an evidentiary hearing if he or she alleges facts that, if proved at the hearing, would entitle petitioner to relief." *Id*. (quoting *Meeks v. Singletary*, 963 F.2d 316, 319 (11th Cir.1992)). Therefore, an evidentiary hearing is not required unless Atwater can demonstrate that his factual allegations, if proven, would indicate that the state courts acted contrary to,

25

or unreasonably applied, clearly established federal law when they rejected his ineffective assistance of counsel claim. *See* 28 U.S.C. § 2254(d)(1).

In this case, the trial court found that:

> [D]efense mitigation witness Dr. Merin, a psychologist, testified to essentially the same information about defendant's early life and family situation as outlined in defendant's claim. Defense counsel also presented testimony from Dr. Merin and from three witnesses regarding defendant's alcohol use. The State points out that the defendant does not suggest what other witnesses should have been called by the defense counsel to testify to mitigation. The Court adopts the State's response as to this claim, and finds that defendant does not meet the performance component of *Strickland v. Washington*, 466 U.S. 668 (1984).

Order Den. Am. Mot. To Vacate J. And Sentence In Part and Order Granting Evidentiary Hr'g In Part, June 29, 1998.

The Florida Supreme Court also addressed the issue and concluded that "[t]he record shows that the evidence [outlined in Atwater's claim] was considered in mitigation, and that the trial court did not find that this nonstatutory mitigation evidence outweighed the aggravating factors. There is no reasonable probability that re-presenting virtually the same evidence through other witnesses would have altered the outcome in any manner." *Atwater II*, 788 So. 2d at 234.

We cannot say that these determinations are unreasonable applications of, or contrary to, federal law. *See* 28 U.S.C. § 2254(d)(1). Therefore, Atwater is not entitled to an evidentiary hearing. For the same reasons, the substance of his

26

ineffective assistance of counsel claim likewise fails.

## VI. Conclusion

For the foregoing reasons, we find that Atwater's claims are without merit. The district court's denial of his petition for writ of habeas corpus is affirmed.

**AFFIRMED.**