WILSON, Circuit Judge,
dissenting:
I dissent from the order reinstating our previous opinion because this case, even more than Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005), compels a finding that Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), was violated. Miller- *1073 El came to the Supreme Court on review “following the Texas trial court’s prior determination of fact that the State’s race-neutral explanations [for striking black veniremembers] were true.” 125 S.Ct. at 2325. The trial court in Miller-El specifically found that the prosecutor’s justifications for striking black veniremembers were “completely credible [and] sufficient” to support a finding of “no purposeful discrimination.” 125 S.Ct. at 2323. The' Supreme Court, reviewing the case under the Antiterrorism and Effective Death Penalty Act of 1996 (the “AEDPA”), stated that “Miller-El may obtain relief only by showing the Texas conclusion to be ‘an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.’ ” Id. at 2325 (quoting 28 U.S.C. § 2254(d)(2)). To prevail, Miller-El was required to prove “by clear and convincing evidence” that the factual determination was unreasonable. Id.; 28 U.S.C. § 2254.
Miller-El had to overcome a difficult burden (clear and convincing evidence); Hightower, on the other hand, does not. In Hightower’s case, the trial court merely found that the prosecutor’s justifications were “articulable” and “nonrace related” and never touched on the credibility of those statements. The Georgia courts never made factual determinations regarding the plausibility of the proffered justifications because they never applied the final step of Batson. Thus, the Georgia courts rendered a decision that was “contrary to, or involved an unreasonable application of, clearly established Federal law.” 28 U.S.C. § 2254(d)(1). In light of the Georgia courts’ error and of the evidence presented to them, I would grant Hightower’s habeas petition.

I. The Georgia courts failed to apply Batson’s third step.

When we initially decided this case, I concurred with the result but expressed reservations about the state courts’ application of Batson. See Hightower v. Scho-field, 365 F.3d 1008, 1041 (2004) (“High-tower I”) (Wilson, J., concurring). As I stated in my concurrence, it appeared that the state trial court and the Georgia Supreme Court failed to properly apply Bat-son’s third step by concluding their analysis at the end of the second step. Id. at 1042.
A Batson challenge requires a three-step inquiry. Rice v. Collins, — U.S. -, 126 S.Ct. 969, 973, 163 L.Ed.2d 824 (2006). “First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question.” Id. (citations omitted). The second step requires evaluating the explanation on its face — “so long as the reason is not inherently discriminatory, it suffices.” Id. Third, the trial court must “assess the plausibility of that reason in light of all evidence with a bearing on it.” Miller-El, 125 S.Ct. at 2331. “This final step involves evaluating ‘the persuasiveness of the justification’ proffered by the prosecutor .... ” Rice, 126 S.Ct. at 974 (quoting Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (per curiam)). The Georgia courts did not apply Batson’s third step.
The trial court made explicit determinations with regard to only the first two steps.[1] The trial court asked the prosecu *1074 tor, Joseph Briley, about each struck black veniremember, starting with Ricky Thomas. After Briley offered his justification, the trial court immediately stated, without asking for the defendant’s input, “Mr. Bri-ley, I find that is an articulable reason the State has stated for striking Ricky Thomas and is not race related.” The trial court then proceeded to ask about the next potential juror. Again after Briley’s explanation, the trial court, without pausing, found that “the State has stated an articu-lable reason for striking Lucious Boswell and the reason is not race related.” The trial court and Briley repeated this sequence for each of the six struck black veniremembers. Finally, after hearing all the prosecutor’s reasons, the court stated, “I find that the defendants have failed to establish a prima facie case of discrimination on the part of the district attorney. I further find that as to each individual strike, the State has presented an articula-ble, nonrace related reason for striking the prospective juror.” The trial court never made a finding that these reasons were credible and never addressed “the persuasiveness of the justification^].” Purkett, 514 U.S. at 768, 115 S.Ct. at 1771.
The Georgia Supreme Court also failed to reach Batson’s final step. Applying a clearly erroneous standard and assuming that Hightower had established a prima facie case, the Georgia Supreme Court affirmed the trial court’s determination that the prosecutor’s reasons for striking veniremembers were race-neutral. The language used in the Georgia Supreme Court’s opinion suggests that once a prosecutor has articulated reasons for his challenges, a court’s finding that those reasons are race-neutral is sufficient to end the Batson inquiry.[2] The Georgia Supreme Court appears to have been evaluating not whether Hightower had met his burden of establishing purposeful discrimination, but merely whether the prosecutor’s proffered reasons for the strikes were race-neutral.
The majority says that the trial court implicitly reached the final step. Ante, 1072 n. 9. I disagree. Implicit findings must be “reasonable in light of the record evidence.” United States v. $2k2,h8f.00, 389 F.3d 1149, 1154-55. The majority does not evaluate the record to determine whether its implicit findings are reason *1075 able. As I explain below, the record fails to support a finding that the prosecutor’s reasons were credible.
The conclusion here is inescapable: By rejecting Hightower’s Batson claim merely because the prosecutor’s justifications were “articulable” and “nonrace related,” the Georgia courts’ adjudication “resulted in a decision that was contrary to, or involved an unreasonable application of,” Batson,[3] § 2254(d)(1).

II. The proffered reasons ivere pretextual.

Having re-considered my pre-Miller-El concurrence, I am now persuaded that had the Georgia courts engaged in all three of Batson’s steps, they in all likelihood would have found a Batson violation.[4] Here, the trial court had before it the number of peremptory strikes used to remove black veniremembers, the voir dire answers of all the veniremembers, the prosecutor’s proffered reasons for striking certain veniremembers, the defendant’s representations about the prosecutor’s history of discrimination in jury selection, and the prosecutor’s response to the accusations.[5]
*1076 Because the Georgia courts never assessed Briley’s credibility regarding his use of peremptory strikes, we have no factual finding to which to defer, and can look to the record to determine whether it supports the proffered justifications. See Miller-El, 125 S.Ct. at 2323, 2326-30 (where the state courts and the Supreme Court looked to the voir dire record to determine whether the proffered reasons were pretextual). “If a prosecutor’s proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack [panelist] who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson’s third step.” Miller-El, 125 5.Ct. at 2325.[6] The record is replete with examples of veniremembers who were struck arguably because of their race, but three strikes are especially troubling, specifically the exercise of peremptory challenges to eliminate Thelma Butler, Ricky Thomas, and Emerson Davis.
Briley claims that he struck Thelma Butler because he successfully prosecuted her brother-in-law twelve years prior. He also claims that Butler was somewhat hostile. From the record, it appears that Butler was an ideal juror for a prosecutor seeking the death penalty. Butler felt that people tried for murder are treated too leniently. She was strongly in favor of the death penalty. She felt that mitigating circumstances must be proven before she would consider imposing a life sentence. Her answers alone undermine the veracity of Briley’s proffered justification, especially since he never questioned Butler about her brother-in-law. Even more striking is the fact that Briley declined to strike a non-black juror, Michael Hensler, who, himself, had been convicted of and imprisoned for voluntary manslaughter by Bri-ley’s office.
In another example, Ricky Thomas’s father had been convicted of killing his mother. Because of this conviction and the fact that Thomas had lived with his father after his father’s release, the prosecutor struck him speculating that Thomas may possibly identify his father’s case with Hightower’s. Yet, Thomas indicated that he was in favor of the death penalty, and that he did not even remember the circumstances surrounding his mother’s killing because he was too young at the time. The prosecutor never questioned Thomas about his relationship with his father or the potential impact on his ability to decide the case fairly. Again, the pretext is more apparent when viewed in light of the fact that Hensler was not struck.
Emerson Davis was struck because the prosecutor claimed that Davis was somewhat opposed to the death penalty, more so than other veniremembers. Davis never stated that he was opposed to the death penalty, but rather had to hear the case *1077 before imposing the penalty. The prosecutor mischaraeterized his voir dire, thereby undermining a claim that the prosecutor’s reason was race-neutral. In fact, Davis’s views were in line with several non-black jurors[7] whom the prosecutor declined to challenge. If Davis was undesirable as compared to other veniremembers on the question about the death penalty, then the prosecutor would have used his remaining peremptory strikes to eliminate other veniremembers who gave similar answers. However, the non-black venire-members who gave similar answers were not struck.
Viewing the evidence in its totality, including the “smoking gun” memorandum penned by Briley, it is clear that Briley’s proffered justifications were pretextual.

III. This case is factually on all fours with Miller-El.

The factual similarities between Miller-El and this case are extensive. In Miller-El, the prosecutors struck ten of the eleven qualified black veniremembers with peremptory challenges. 125 S.Ct. at 2325. Here, Briley, used six of seven peremptory strikes to strike black veniremembers.[8] In Miller-El, the prosecutor struck a black veniremember because the juror was “inclined” to favor rehabilitation, while non-black jurors, who expressed stronger beliefs in favor of rehabilitation, were not struck. 125 S.Ct. at 2327-29. Here, Bri-ley struck Davis, a black veniremember, because he was “somewhat opposed to the death penalty” as compared to other veniremembers, but did not strike non-black veniremembers, such as Carter, Shatterly, and others mentioned above, who expressed views similar to Davis’s, and in some instances expressed views more equivocal than Davis’s.
Further, in Miller-El, the prosecutor struck from the jury black veniremembers because they had relatives who were prosecuted by the D.A.’s office. 125 S.Ct. at 2328. The Court noted the prosecutor’s failure to inquire into the details of the convictions and relationships as further evidence that the reason was a pretext. Id. Here, Briley struck four black venire-members because they allegedly had relatives who were prosecuted by the D.A.’s office.[9] Just as in Miller-El, Briley did not inquire into the details of these convictions and relationships. Briley also declined to challenge Hensler, a non-black juror who himself had been prosecuted and convicted of voluntary manslaughter.
In Miller-El, the prosecutor, while stating the race-neutral reasons for the strikes, mischaraeterized the voir dire testimony of some of the black venire-members he struck. 125 S.Ct. at 2327. Similarly, Briley mischaraeterized the testimony of Davis.
This case is a more factually compelling Batson violation than Miller-El because of Briley’s personal history of past discrimination. The defendant in Miller-El demonstrated little, if any, past history of discrimination by the specific prosecutors involved in his case, relying mainly on a *1078 manual that instructed prosecutors to minimize the number of black jurors. The Supreme Court stated that this evidence confirmed its conclusion that the race-neutral reasons were pretextual. 125 S.Ct. at 2339. Here, Briley himself authored a memorandum that spelled out the scheme to limit the number of blacks in the jury pool. The Hightower’s counsel argued that Briley had “in the past shown a bent and scheme to keep down the [] number of blacks” serving on jury panels, and claimed that Briley wrote a memorandum detailing a plan to limit the number of blacks on grand juries. Instead of denying involvement with the memorandum, Briley responded to the accusations arguing that the memorandum could be viewed as an effort to improve matters.
Had the trial court delved into Batson’s third step, this evidence alongside the other evidence would have cast grave doubt on the truthfulness of Briley’s proffered reasons.

TV. Conclusion

The Georgia courts made no determination as to whether the prosecutor’s proffered justifications were pretextual. In finding no Batson violation, the state courts relied on the fact that the proffered justifications were “articulable” and “non-race related.” This is sufficient for Bat-son’s second step, but not the third step which “involves evaluating the persuasiveness of the justification.” Rice, 126 S.Ct. at 974. We cannot presume that Briley’s proffered justifications were truthful because the trial court never made that finding. After reviewing the evidence available to the trial court, I conclude that Briley’s reasons were pretextual, and that Batson was violated. Accordingly, I would grant Hightower’s writ of habeas corpus.
The Supreme Court vacated our prior decision and remanded this case “for further consideration in light of [Miller-El].” Hightower v. Schofield, — U.S. -, 125 S.Ct. 2929, 2929-30, 162 L.Ed.2d 863 (2005). Reinstating the prior panel opinion violates the Supreme Court’s express mandate. Respectfully, I dissent.

. The trial court found that Hightower failed to establish a prima facie case of discrimination. That determination is erroneous. See Hightower I, 365 F.3d at 1043 (Wilson, J., *1074 concurring). Both the majority, here, and the Georgia Supreme Court assumed for purposes of analysis that Hightower established a prima facie case of discrimination.

. The Georgia Supreme Court's entire discussion of Hightower’s Batson claim is as follows:
The defendant contends the prosecution was guilty of racial discrimination. The prosecutor used only seven of his authorized 10 peremptory strikes. He used six of those seven strikes against black prospective jurors. The record shows that at least two black prospective jurors were struck by the defendant after having been accepted by the prosecutor. The prosecutor explained his peremptory challenges. Four of the challenged prospective jurors were closely related to persons convicted of serious felonies. The other two were conscientiously opposed to the death penalty, although not to the extent they were excused for cause. The trial court found that the prosecutor had articulated legitimate non-racial reasons for his challenges. Even assuming the defendant made out a prima facie case, the trial court's determination is not clearly erroneous.
Hightower v. State, 259 Ga. 770, 773, 386 S.E.2d 509, 512 (1989) (citations omitted). The Georgia Supreme Court used the words "legitimate” and "non-racial” when paraphrasing the trial court’s findings regarding to the prosecutor's proffered reasons, but the trial court stated that for each struck venire-member, "the State [] presented an articula-ble, nonrace related reason.” Importantly, the Georgia Supreme Court merely affirmed the trial court's findings, which did not include findings as to the plausibility of the prosecutor’s proffered reasons.

. This case is distinguishable from Atwater v. Crosby, 451 F.3d 799 (11th Cir.2006). In Atwater, we held that generally a defendant must present some evidence or argument of comparability at the time that the Batson-challenge is made in order to rely upon that argument in habeas proceedings. Id. However, in Atwater, the trial court "went beyond a mere finding that the state articulated a race neutral reason for the strike.” Id. "The trial judge upheld the peremptory strike after agreeing that [the juror] exhibited some difficulty with her responses to the prosecution question.” In so doing, "the third step of the Unison-analysis was touched.” Id. Here, the judge merely found, for every struck black veniremember, that Briley had given an "ar-ticulable” and "nonrace related” justification for the strike-never venturing beyond Batson’s second step requiring a clearly articulated, race-neutral justification.

. "Wisdom too often never comes, and so one ought not to reject it merely because it comes late.” Henslee v. Union Planters Nat. Bank & Trust Co., 335 U.S. 595, 600, 69 S.Ct. 290, 293, 93 L.Ed. 259 (1949) (Frankfurter, J„ dissenting).

. The defense attorney made the following statement, among others, in support of High-tower's Batson challenge:
[Of the seven peremptory strikes, Briley] has used six of those strikes to strike blacks .... Mr. Briley has in the past shown a bent and scheme to keep down the low number of blacks on either the grand jury or regular panels .... He has purposely excluded blacks so that Mr. Hightower will not get a fair and impartial hearing on this case and this matter.
Your Honor, I have here a copy of the Pulton Daily Reporter which was on Wednesday, March 30, 1988, where we got headlines, "Does County Plan To Discriminate, high court hears jury panel.” This was regarding the case of the State v. Ama-deo which has gone up to the Georgia Supreme Court. I will make a quote here from the U.S. Supreme Court Justice John Paul Stevens. "The evidence disclosed is the intentional program of rigging the jury by the prosecutor’s office.” This arose out of a memo which has been attributed to Mr. Briley stating that there was a purpose and a plan to have a member [sic] number of blacks on the grand jury in Putnam County in order to have it just half the jury criteria for grand jury .... You are well acquainted with that case, Your Honor. We would say that this is the same circumstances [sic], the same sort of scheme that Mr. Briley was doing in this particular case. He is purposely using his strikes to provide for just the minimum amount of blacks, absolutely the minimum amount, but what he has done is prevented Mr. Hightower from getting a fair and impartial hearing. Importantly, Briley, although disputing the
memorandum's purpose, essentially admitted penning the memorandum when he responded, "Your Honor, insofar as the statements from the Daily Report and the statements from Justice Stevens, ... I believe Justice O’Conner asked the defense lawyer . . . 'couldn’t it have been that Mr. Briley was trying to get the matter improved and was telling them how few they could put on it, in *1076 the jury box.' So, Your Honor, it is a matter of which direction you look at this case

. The majority states that in order for us to consider Hightower's arguments comparing struck black veniremembers with non-challenged non-black veniremembers, “he must establish cause for his counsel’s failure to present the argument [in state court] and resulting prejudice.” Majority Op., at 1073. To the extent that the majority holds that any part of Hightower’s Batson claim procedurally defaulted, I disagree. No Georgia court has ever found any part of Hightower's Bat-son claim procedurally barred, nor did the majority mention this as a ground for denying relief in the prior vacated opinion. See, generally, Hightower v. State, 259 Ga. 770, 386 S.E.2d 509 (1989); Hightower I, 365 F.3d 1008 (2004). Furthermore, the comparative juror analysis is further evidence of a Batson violation that the trial court could have considered at Batson’s third step, whether counsel made the argument or not. See, e.g., Miller-El, 125 S.Ct. at 2325 (where comparative juror analysis was considered).

. These jurors include Merrick Carter, Rhonda Batchelor, Nellie Stapp, M.P. Ervin, Miriam Shatterly, and John Hutcheson.

. In Miller-El, one black juror was allowed to serve. 125 S.Ct. at 2325. Here, three black jurors served at trial. This difference is unimportant, especially in light of Briley's memorandum. A prosecutor using any of its peremptory challenge to eliminate a venire-member because of race runs afoul of the Equal Protection Clause. See Batson, 476 U.S. at 98 n. 22, 106 S.Ct. at 1724 n. 22; Cochran v. Herring, 43 F.3d 1404, 1412 (11th Cir.1995).

.Briley struck Butler, Thomas, Lucious Boswell, and Mattie Harris.