**UNION PLANTERS NAT. BANK v. HENSLEE.**

**No. 10576.**

Circuit Court of Appeals, Sixth Circuit.

March 15, 1948.

994

Sam P. Walker, of Memphis Tenn. (Sam P. Walker and D. T. Page, both of Memphis, Tenn., on the brief; Waring, Walker & Cox, of Memphis, Tenn., of counsel), for appellants.

Louise Foster, of Washington, D. C. (Theron Lamar Caudle, Sewall Key, George A. Stinson and Irving I. Axelrod, all of Washington, D. C., Ward Hudgins, of Franklin, Tenn. and A. C. Denning, of Nashville, Tenn., on the brief), for appellee.

Before HICKS, SIMONS and MILLER, Circuit Judges.

HICKS, Circuit Judge.

Suit by the Executors of the Will of Willam Bate Williams to recover of the Collector of Internal Revenue for the District of Tennessee the sum of $35,899.12, with interest.

The court sustained defendant's motion to dismiss upon the ground that the complaint did not state a cause of action; hence this appeal.

No citation of authorities is needed to support the proposition that upon such a motion all allegations of fact, properly pleaded in the complaint and its amendments, must be taken as true and the motion to dismiss must be denied unless it clearly appears that the allegations of fact are insufficient to entitle the plaintiff to recover.

The facts as stated in the complaint and its amendments are as follows: William Bate Williams, a resident and citizen of Shelby County, Tennessee, died on July 22, 1943, leaving a Will of which the plaintiffs qualified as Executors. They, as such executors, made careful inventories and determined that the gross value of the estate was $508,411.17 and that the necessary expenses of administration would reduce this value to a net of $426,899.10. The will, filed as Exhibit A to the complaint, made a number of specific bequests and contained a residuary clause directing the executors to pay the balance of the estate, when converted into cash, to, (1) The Mary Galloway Home for Aged Women; (2) The Crippled Children's Hospital School; (3) The Home for Incurables; and (4) The Sunshine Home for Aged Men. Each was a charitable institution qualified to take the bequests under the laws of Tennessee.

On October 26, 1944, appellants filed their Federal Estate Tax return which was due four days earlier. In the return they deducted the charitable bequests to the value of $121,869.20. The deductions were normally allowable under Sec. 303(a) (3) of the Revenue Act of 1926, 44 Stat. 9, as amended by Sec. 403(a) of the Revenue Act of 1934, 48 Stat. 680, if the amount of the deduction is "presently ascertainable." Sec. 812(d), Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 812(d). By the Regulations the deductions must be "ascertainable" at the time of the testator's death. Treas. Reg. 105, Sec. 81.44.

On March 9, 1945, the Collector made a deficiency assessment against the estate of $1,920.61, which was paid. On August 10, 1945, he made an additional assessment of $33,081.52, basing it upon the disallowance of the charitable bequests deducted in the return. On September 6, 1945, appellants protested this second deficiency assessment, which protest was overruled on September 26, 1945. The assessment, together with interest, was paid, and on April 18, 1946, appellants filed a claim for refund, which was denied on August 14, 1946. This suit to recover the amount of the second deficiency assessment tax, with interest, paid under protest, followed.

Our question is, whether the court erred in dismissing the complaint. We think it did. The District Court was of the opinion that the case as set forth in the complaint was governed by Merchants National Bank of Boston, Executor, v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35. It did not specifically say so, but necessarily must have concluded that the averments of the complaint failed to show that the deductions for the charitable bequests, if established, were ascertainable at the date of the testator's death, or in other words, that the averments failed to show that the bequests to the mother would not encroach upon the corpus of the estate from which the charitable bequests would be paid.

▆ In the Merchants Bank case, the court said, at page 261 of 320 U.S., page 111 of 64 S.Ct.: "For a deduction under § 303 (a) (3) to be allowed, Congress and the Treasury require that a highly reliable appraisal of the amount the charity will receive be available, and made, at the death of the testator. Rough guesses, approximations, or even the relatively accurate valuations on which the market place might be willing to act are not sufficient. Cf. Humes v. United States, 276 U.S. 487, 494, 48 S.Ct. 347, 348, 72 L.Ed. 667. Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable. And, in these cases, the tax-payer has the burden of establishing that the amounts which will either be spent by the private beneficiary or reach the charity are thus accurately calculable. Cf. Bank of America Assn. v. Commissioner, 9 Cir., 126 F.2d 48 (C.C.A.)."

This is the latest pronouncement of the Supreme Court and we are bound by it. It would serve no good purpose to attempt to differentiate it from the previous case of Ithaca Trust Co. v. United States, 279 U. S. 151, 49 S.Ct. 291, 73 L.Ed. 647, which the opinion in the Merchants Bank case recognized. It is enough to say that the Ithaca case is more nearly akin to our case.

The will was made Exhibit A to the complaint. The mother took a life estate only. The relevant portion thereof is found in Item 3, to wit:

"I hereby devise and bequeath all of my property, real, personal and mixed whereso-ever located, including all insurance of any kind, to the said Milburn K. Noell, and the Union Planters National Bank and Trust Company, as trustees, to be administered for the use and benefit of my beloved mother, Elizabeth Bate Williams, for and during her natural life, with the full power and authority herein conferred.

"I hereby direct both my executors and my trustees to pay to my mother the sum of Seven Hundred Fifty ($750.00) Dollars a month to be used by her as she sees fit. In the event the income from my estate is not sufficient to pay the said Seven Hundred Fifty ($750.00) Dollars each month, then my executors and trustees are hereby empowered, authorized and directed to encroach on the corpus of the estate to pay said amount and to sell any of my property, real or personal, for this purpose.

"In addition to this amount my said executors and trustees are authorized and empowered to use and expend in their discretion any portion of my estate, either income or principal, for the pleasure, comfort and welfare of my mother.

"The first object to be accomplished in the administration and management of my estate and this trust is to take care of and provide for my mother in such manner as she may desire and my executors and trus-

tees are fully authorized and likewise directed to manage my estate primarily for this purpose. * * *"

The appellants were not only executors but were trustees of the estate as well. They were given wide discretionary powers and it may be inferred that they were not only highly competent but well equipped for the discharge of their duties. The complaint indicates that the amounts of the charitable bequests, if they can be allowed at all, were correctly set forth.

The complaint alleges certain facts which were "readily ascertainable" at the time of the testator's death. These alleged facts are in substance as follows:

Prior to the testator's death he lived with his mother in her home in Memphis and during the summer months in her home at Monteagle, Tennessee. At the time of the testator's death his mother was 85 years of age. She had no dependents or close relatives and was worth approximately $100,-000 in her own right. She had a considerable income of her own and at her son's death made no request or demand of any character for additional sums over and above the $750 per month provided for her in the will nor expressed any "desire" for such. Her mode of living was simple and economical. Her actual living expenses had been considerably less than the monthly bequest.

■ We think that the mother's economical habits formed and maintained during her long life raise a presumption that they would continue and that this presumption was entitled to considerable weight by the court. It is of course a disputable presumption but nothing appears in the complaint to rebut it.

In addition to the facts "readily ascertainable" at the time of the testator's death, the complaint avers certain "reliably predictable" facts which turned out to be unerringly true. At the time of the testator's death his mother had a life expectancy of three years. She died at 88. Further, the complaint alleges that a reasonable survey of testator's estate at the time of his death showed that the income therefrom was pro-ducing and would produce in the future a very considerable excess in income over and above the $750 required to be paid monthly to the mother of testator. This prediction was conservative and according to the complaint turned out to be correct, since the executors had on hands at the time the suit was brought and after paying the $750 monthly bequest to the mother, more than $18,000 derived from income. These predictions, as to the life expectancy of testator's mother and the income the estate would produce, were something more than "rough guesses."

■ We think that the evidence as to what the estate would likely produce was relevant and should have been considered by the court for whatever it was worth in determining the reliability of the prediction at the time it was made.

The complaint further avers that the executors after carefully examining the facts immediately after the death of testator, concluded that there was no possibility that the life beneficiary would ever invade the corpus of the estate. This of course was a mixed question of law and fact.

■ Appellee insists that by the terms of testator's will the mother had the right, if she so desired, to take all of the estate and leave nothing for the charitable bequests. This contention is predicated upon the first and fourth clauses of Item 3. These clauses do not directly bequeath to the mother any part of the estate in addition to the $750 monthly bequest found in clause 2. Clause 1 does empower the trustees to administer the estate for the use and benefit of testator's mother for and during her natural life; and clause 4 directs that the executors and trustees manage and administer the estate so as to take care of and provide for the mother in such manner as she may desire. These clauses do not directly authorize the trustees to encroach upon the estate for this purpose and they must be read in connection with clause 3, which authorizes and empowers the executors and trustees to encroach upon the corpus of the estate for the pleasure, comfort and welfare of testator's mother only *in their discretion*. In this respect they differ from

clause 2, which specifically authorizes and empowers the executors and trustees to encroach upon the corpus to pay the $750 monthly bequest, and to sell any of the testator's property, real or personal, for this purpose.

■ We think that the conclusion of the executors and trustees, after an examination of the facts, actual and predictable, immediately after the death of testator, that there was no possibility that the mother would ever invade the corpus of the estate, might be regarded as a reasonable one. At least it should not have been regarded so unreasonable as to justify the dismissal of the case upon motion. There are border-line cases wherein deductions are allowed or disallowed, when tested by the formula in the Merchants Bank case. It will serve no good purpose to cite these cases since after all each case must stand or fall upon its own particular facts and circumstances. We have found no case wherein the question has been determined upon a motion to dismiss.

■ We think that the case requires a trial upon appropriate issues made up by the pleadings. We do not decide that appellants are entitled to recover, because that question is not before us. If, upon remand and trial the court should determine that appellants have not made out their case by the weight of the evidence, judgment for appellee would be indicated; but if the court should find that at the time of testator's death there was nothing more than a bare possibility, i. e., a possibility so remote as to be negligible that the charitable bequests would fail, judgment for appellants would follow. Commissioner of Internal Revenue v. Upjohn's Estate, 6 Cir., 124 F.2d 73, 76; Commissioner v. F. G. Bonfils Trust, 10 Cir., 115 F.2d 788, 793; Commissioner v. Robertson's Estate, 4 Cir., 141 F.2d 855, 858. The Robertson case cited and discussed the Merchants Bank case.

We are the better satisfied with the result arrived at because it tends to support Congressional policy toward charitable bequests.

The case is reversed and remanded for proceedings consistent herewith.