## HENSLEE, COLLECTOR OF INTERNAL REVENUE, *v.* UNION PLANTERS NATIONAL BANK & TRUST CO. ET AL.

No. 90. Argued December 14, 1948.—Decided January 3, 1949.

*Arnold Raum* argued the cause for petitioner. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Caudle, Ellis N. Slack, Lee A. Jackson* and *Harry Baum.*

*Sam Polk Walker* argued the cause for respondents. With him on the brief was *Roane Waring.*

Per Curiam.

Respondents are the executors and trustees of the estate of William Bate Williams. They brought this

596

action for refund, with interest, of $35,899.12 of federal estate taxes and interest paid under protest. The relevant facts, set forth in respondents' complaint and admitted by the Collector's motion to dismiss, are as follows:

William Bate Williams died in 1943. Under the terms of his will, the entire gross estate of $508,411.17 was bequeathed to respondents to hold in trust for the testator's

"beloved mother, Elizabeth Bate Williams, for and during her natural life, with the full power and authority herein conferred.

"I hereby direct both my executors and my trustees to pay to my mother the sum of Seven Hundred Fifty (750.00) Dollars a month to be used by her as she sees fit. In the event the income from my estate is not sufficient to pay the said Seven Hundred Fifty ($750.00) Dollars each month, then my executors and trustees are hereby empowered, authorized and directed to encroach on the corpus of the estate to pay said amount and to sell any of my property, real or personal, for this purpose.

"In addition to this amount my said executors and trustees are authorized and empowered to use and expend in their discretion any portion of my estate, either income or principal, for the pleasure, comfort and welfare of my mother.

"The first object to be accomplished in the administration and management of my estate and this trust is to take care of and provide for my mother in such manner as she may desire and my executors and trustees are fully authorized and likewise directed to manage my estate primarily for this purpose."

The will went on to provide for distribution of the corpus of the estate remaining at the mother's death. Twenty-five per cent of the total remaining estate was bequeathed to the testator's cousin, and stated sums in

cash were left to other named legatees. After these legacies, the balance of the estate was directed to be paid over to four named charities, in equal shares.

At the time of the testator's death the estate was earning a net income of approximately $15,000 per year, $6,000 more than the amount directed to be paid, at $750 per month, to the testator's mother. The mother at that time was eighty-five years old, lived on substantially less than $750 per month, and had independent investments worth approximately $100,000 which netted her an income of about $300 per month. A woman of moderate needs and without dependents, she died three years later without having requested respondents to invade the trust corpus in her behalf.

The disputed estate tax liability resulted from respondents' attempt to deduct from the gross estate the portion bequeathed to the four charities, in reliance on the charitable deduction provision of § 812 (d) of the Internal Revenue Code.[1] The Commissioner denied the deduction. The Collector here resists the refund claim, on the ground that the possibility of invasion of the corpus on behalf of the testator's mother prevented the ultimate charitable interest, at the testator's death, from being "presently ascertainable, and hence severable from the interest in favor of the private use," within the meaning of the applicable Treasury Regulation.[2]

---

[1] 26 U. S. C. § 812 (d), 53 Stat. 124–125, as amended by Revenue Act of 1942, § 408 (a), 56 Stat. 949, and Revenue Act of 1943, § 511 (a), 58 Stat. 74–75.

[2] "If a trust is created for both a charitable and a private purpose, deduction may be taken of the value of the beneficial interest in favor of the former only insofar as such interest is presently ascertainable, and hence severable from the interest in favor of the private use. . . ." U. S. Treas. Reg. 105 § 81.44 (1942). Cf. id. at § 81.46: "If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject

On the authority of *Merchants Bank* v. *Commissioner,* 320 U. S. 256, the District Court granted the Collector's motion to dismiss. 74 F. Supp. 113. The Court of Appeals reversed. 166 F. 2d 993. It held that, notwithstanding the language of the testamentary provision for the "pleasure, comfort and welfare" of the mother, the complaint's allegations of the mother's great age, independent means and modest tastes raised a triable issue of fact as to whether the trust corpus was threatened with invasion and the charitable interest hence subject to depletion in favor of the testator's mother.

We agree with the District Court that this case is governed by the decision in the *Merchants Bank* case and that the suit should be dismissed. It is apparent on the face of the complaint that this testator's will did not limit the trustees' disbursements to conformity with some ready standard—as where, for example, trustees are to provide the prime beneficiary with such sums as "may be necessary to suitably maintain her in as much comfort as she now enjoys." *Ithaca Trust Co.* v. *United States,* 279 U. S. 151, 154. The stated income here directed to be paid to the mother was "to be used by her as she sees fit." Beyond this the trustees were empowered to invade or wholly utilize the corpus of the estate for the mother's "pleasure, comfort and welfare," bearing in mind the testator's injunction that "The first object to be accomplished . . . is to take care of and provide for my mother in such manner as she may desire . . . ." [3]

---

to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of such power."

[3] In view of the express priority accorded the mother's wishes, respondents' fiduciary duty to the ultimate beneficiaries, private and charitable, was ineffective to guarantee preservation of any predictable fraction of the corpus for disposition after the mother's

As in the *Merchants Bank* case, where the trustees had discretion to disburse sums for the "comfort, support, maintenance, and/or happiness" of the prime beneficiary, so here we think it the "salient fact . . . that the purposes for which the widow could, and might wish to have the funds spent do not lend themselves to reliable prediction." 320 U. S. 256, 258, 262.

We do not overlook the unlikelihood that a woman of the mother's age and circumstances would abandon her customary frugality and squander her son's wealth. But, though there may have been little chance of that extravagance which would waste a part or consume the whole of the charitable interest, that chance remained. What common experience might regard as remote in the generality of cases may nonetheless be beyond the realm of precise prediction in the single instance. The contingency which would have diminished or destroyed the charitable interest here considered might well have been insured against, but such an arithmetic generalization of experience would not have made this charitable interest "presently ascertainable." [4] "Rough guesses, approxima-

---

death. The testator, indeed, made the gifts to charity subordinate not only to his mother's interest but to that of all the private beneficiaries, stating in his will that the charitable interest "is a residuary bequest . . . and is not to infringe on any of the other legacies hereinbefore provided."

[4] ". . . [T]he fundamental question in the case at bar, is not whether this contingent interest can be insured against or its value guessed at, but what construction shall be given to a statute. Did Congress in providing for the determination of the net estate taxable, intend that a deduction should be made for a contingency, the actual value of which cannot be determined from any known data? Neither taxpayer, nor revenue officer—even if equipped with all the aid which the actuarial art can supply—could do more than guess at the value of this contingency. It is clear that Congress did not intend that a deduction should be made for a contingent gift of that character." *Humes* v. *United States,* 276 U. S. 487, 494.

tions, or even the relatively accurate valuations on which the market place might be willing to act are not sufficient." *Merchants Bank* v. *Commissioner, supra* at 261.

Nor do we think it significant that the trust corpus was intact at the mother's death, for the test of present ascertainability of the ultimate charitable interest is applied "at the death of the testator." *Ibid.* The charitable deduction is a matter of congressional grace, and it is for Congress to determine the advisability of permitting amendment of estate tax returns at such time as the probable vesting of the charitable interest has reduced itself to unalterable fact.

*Reversed.*

Mr. Justice Douglas and Mr. Justice Jackson dissent upon the grounds stated in dissent in *Merchants Bank* v. *Commissioner*, 320 U. S. 256, at 263.

Mr. Justice Frankfurter, dissenting.

Wisdom too often never comes, and so one ought not to reject it merely because it comes late. Since I now realize that I should have joined the dissenters in the *Merchants Bank* case, 320 U. S. 256, I shall not compound error by pushing that decision still farther. I would affirm the judgment, substantially for the reasons given below. 166 F. 2d 993.