Charles O. GILFILLAN, Executor of the Estate of Emma K. Gilfillan, deceased; Charles O. Gilfillan and First Trust Company of Saint Paul as Trustees under the Last Will and Testament of Emma K. Gilfillan, and Charles D. Gilfillan, Memorial, Inc., a corporation, Plaintiffs,

v.

E. F. KELM, Collector of Internal Revenue for the District of Minnesota, Defendant.

Civ. A. No. 1983.

United States District Court, D. Minnesota, Third Division.

Feb. 9, 1955.

**292**

Irving Clark, of Doherty, Rumble & Butler, St. Paul, Minn., for plaintiffs.

H. Brian Holland, Asst. Atty. Gen., E. A. Goldstein, Sp. Asst. to the Atty. Gen., George E. MacKinnon, U. S. Atty., St. Paul, Minn., for defendant.

DONOVAN, District Judge.

This is an action for refund of federal estate taxes. Claim for refund was properly filed, suit timely commenced, and the Court has jurisdiction. The pertinent facts and issues are undisputed and may be summarized.

Plaintiffs seek to recover $30,137.89 with interest, a deficiency assessed and paid, growing out of an estate of one Emma K. Gilfillan, who died testate on December 13, 1945. By her will she created a memorial, known as the Charles D. Gilfillan Memorial, Inc., a charitable corporation under the laws of Minnesota. The corporation has been ruled exempt from federal income tax and gifts to it are deductible for income and estate tax purposes.

The will directed that the residue of the estate be divided into four equal parts. Two of the parts were bequeathed to the Memorial. Each of the other two parts was placed in a separate trust for the primary benefit of a niece (Mary Thurman Sisson) and a nephew (Francis Gilfillan Kingsland-Smith).

The will also directed the trustees to pay to Mary Thurman Sisson so much of the net income of one-fourth of the trust fund as shall be needed for her comfortable support and maintenance, in addition to her other income; the decision of the trustees as to amounts payable to be final; any income not so required to be paid over to Frederick J. Gilfillan and Charles O. Gilfillan, or either of them, if they, or either of them, need any of the income for comfortable support and maintenance; all income not so needed by any of the named beneficiaries to be paid over annually to the Memorial; and on the death of the last survivor of the named beneficiaries, the trust to be terminated and all property in the hands of the trustees to be paid over to the Memorial.

The will provided further, in identical terms, that the income of another one-fourth of the trust fund shall be paid over, according to needs, to Francis Gilfillan Kingsland-Smith, Frederick J. Gilfillan and Charles O. Gilfillan, and, if not needed, to the Memorial, and upon termination of the trust the corpus thereof to be paid to the Memorial.

A charitable deduction was claimed on behalf of the testatrix for the full value of the property placed in trust as described above. The Commissioner allowed as a deduction the value of the remainder interest in the property placed in trust. That is, he reduced the value of the transferred property (the amount for which deduction was claimed) by the value of the right of each life beneficiary to receive trust income. This ruling was adopted by the Commissioner on the grounds that the terms of the trust were such as to make it impossible as of the date of the testatrix' death to calculate accurately the amount of trust income which would be distributed to the beneficiaries during their lifetime. That is, the Commissioner determined that the only amount which was certain to reach the charities was the value of the remainder interest in the property transferred for the reason that the amounts claimed were not deductible under Section 812(d) of the Internal Revenue Code, 26 U.S.C.A. § 812(d), because neither the amounts of the income that the designated beneficiaries would require during

their respective lives, nor the value at date of decedent's death of the bequest to charity *could be computed.* Thereupon action for refund was commenced.

From the foregoing it is obvious that the principle involved is one of law arising out of appropriate interpretation of the trust instrument. The sole issue is whether the amount of income which the primary beneficiaries of the trust will use during their respective lives can be computed or determined.

Plaintiffs and defendant agree that the essential elements of this type of charitable deduction are (1) a fixed standard, and (2) probability of invasion being remote. While counsel suggests that this case may be unique as involving invasion of income rather than of principal, the rules of law involving the invasion of principal would seem applicable.

The factual situation with reference to each of the three named individual beneficiaries, Frederick J. Gilfillan, Charles O. Gilfillan and Francis Kingsland-Smith, from the standpoint of the remoteness of invasion or the extent of possible invasion in terms of the established standard for the purpose of determining the likelihood or possibility that the charity will take and the value of what it will receive in such an event, should be considered in the order in which the beneficiaries are named. Perhaps the best approach to a proper disposition of this issue is to consider the cogent evidence bearing thereon, as it affects said beneficiaries, and the contentions of the respective parties in connection therewith.

### Frederick J. Gilfillan.

This beneficiary is the brother of Charles O. Gilfillan, and was 71 years of age on December 13, 1945, the date of death of Emma K. Gilfillan. He resided in Uruguay and had a life expectancy on that date of 8.00 years. He was the beneficiary of a trust created by himself and for his own benefit, from which, at the time of death of Emma K. Gilfillan, for the preceding nine years (according to plaintiff's calculations) he had received an income averaging $22,967.96. His dependents were his wife and his mother-in-law. At the date of death of testatrix, Frederick executed an affidavit stating his own income was and had been "more than ample for my comfortable support and maintenance."[1]

Defendant attacks this evidence as being insufficient to sustain the burden of proof in that it does not show the expenditures of Frederick. Also, defendant contends that wealthy men may live beyond their incomes and that it is impossible to speculate whether the possibility of invasion was remote or likely.[2]

It is the contention of plaintiffs that the test herein is "probability" of invasion, not "bare possibility", and that any power of the beneficiary to dissipate his own funds is a fact question bearing on the ultimate fact of whether the probability of invasion is so remote as to be negligible. Plaintiffs' answer to expenditures apparently is embodied in the evidence that Frederick never did invade the principal, which, of course, runs up against the objection of defendant that the estate is settled as of the date of the testator's death.

### Charles O. Gilfillan.

This beneficiary was 73 years of age at the date of death of Emma K. Gilfillan and had a life expectancy of 7.11 years. He did, and still does, reside in Redwood Falls, Minnesota. He has a wife and no children. He owns fourteen farms, plus additional income from securities. According to plaintiffs' calculations (based on evidence adduced) Charles had an average net income for the entire period 1938 through 1953 of $34,835.53 per year, and an average net income for the years commencing in 1938 and ending with the year of death of Emma K. Gilfillan of $22,427.40. The testimony es-

1. Defendant claims this affidavit is a mere conclusion, but other facts pertaining to Frederick's status are in evidence.

2. Defendant cites the language of the Court in the Henslee case, infra, 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259.

tablished that Charles O. Gilfillan led a simple and frugal life.

Defendant again contends that it is not improbable that Charles O. Gilfillan might dispose of all his interest and invade the trust. Also, defendant contends the plaintiffs have failed in the burden of proof in not showing the regular expenditures and mode of living of Charles O. Gilfillan commenting thereon that the only evidence in this regard was that his farm manager, Mr. Victor H. Heyn, testified that for seven months of the year Mr. Gilfillan and his wife were absent from Minnesota sojourning in Florida or Arizona. Mr. Heyn admitted that he had no knowledge of what expenditures were made during those months, other than the amounts reflected in Mr. Gilfillan's personal checks, which were in his keeping in Redwood Falls.

### Francis Gilfillan Kingsland-Smith.

The evidence as to this beneficiary is questionable because of his unusual background and future possibilities. It appears from the testimony that he has always been in need of supervision, necessitating provision for his support, care and housing in a country environment, free from the cares and strains of the work-a-day world. Defendant concedes that from the distribution of trusts set up for this man's benefit, his support and maintenance were achieved within the income available to him. While defendant still objects to evidence of subsequent events, he claims that even that evidence supports the defendant's position that the plaintiffs have failed to sustain the burden of proof.[3]

Defendant in this connection points out that the average amount of $9,000 was distributed annually to Francis in the seven years following the death of testatrix, and that the amounts retained by the trusts during the same period total $7,805.83. Defendant contends that the margin of income during those years was only slightly more than $1,000 per year and that this margin is not so great as to preclude the possibility that trust income would be necessary in future years to supplement the beneficiary's income from other sources in order to assure his comfortable support and maintenance. Defendant comments on the fact that because of the nature of the beneficiary's unusual background, there is likelihood that his expenses will increase rather than remain at what has now been a minimum expenditure.

On the other hand, plaintiffs contend the record shows that every year a substantial portion of the amounts distributed to the beneficiary was saved and that, with an average yearly income available of about $10,000 in those years, Kingsland-Smith has used only about $8,100 per year, and has additional reserves. Plaintiffs urge the criterion is as defined in the Ithaca Trust case, supra, that there be "no uncertainty appreciably greater than the general uncertainty that attends human affairs."

 The Court has read, studied and considered the decisions of the Supreme Court of the United States from the Ithaca Trust Co. case, supra, to Commissioner of Internal Revenue v. Estate of Sternberger, 75 S.Ct. 229, and can find nothing in the cases cited by defendant that conflicts with the conclusion reached in the instant case. This Court prefers the reasoning of the Ithaca case, supra, and the humane approach to the problem

---

3. It is defendant's contention that the value of the thing to be taxed must be estimated as of the time when the act is done. Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647; Wells Fargo Bank & Union Trust Co. v. Commissioner, 9 Cir., 145 F.2d 130; Henslee v. Union Planters Nat. Bank & Trust Co., 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259, and Merchants Nat. Bank v. Commissioner, 320 U.S. 256, 261, 64 S.Ct. 108, 88 L.Ed. 35.

On the other hand, plaintiffs contend that evidence as to subsequent events is admissible to corroborate a judgment made as of the date of death, citing II Paul, Federal Estate and Gift Taxation, pages 1316 et seq.

by the Eighth Circuit Court of Appeals.[4] Clearly where the amount of the bequest to charity is determinable the deduction should be allowed, and where not determinable the deduction, with equal propriety, should be disallowed.

Obviously, the application of the taxing statute as herein made by defendant is not free from doubt, and as so tersely said by the Eighth Circuit Court of Appeals in the Lucas case, supra, in such a situation, "doubts in taxing statutes should be resolved in favor of the beneficiary * * * and funds set aside by a charitably inclined testator * * * should not be taken for taxes unless such is the clear intent of the law." There appears to be no legislative history that would tend to explain the meaning of the statute. The instant case appears to be one where "the possibility that the charity will not take is so remote as to be negligible."[5]

The rule laid down in the Ithaca case seems most nearly to comply with and conform to Congressional intent and will be applied to the instant case. Defendant has not convinced this Court that the Ithaca case has been overruled, and in so far as it has not been overruled it must be adhered to in the case here under consideration.

The Court is not impressed by the argument of defendant that the individuals named in this will could thwart the charitable purpose by spending all of their private funds,[6] but is mindful of the fact that the test of present ascertainability of the ultimate charitable interest is applied "at the death of the testator" and that "rough guesses, approximations, or even the relatively accurate valuations on which the market place might be willing to act are not sufficient." Merchants Nat. Bank v. Commissioner, supra [320 U.S. 256, 64 S.Ct. 111].

It appears apparent from the evidence adduced as to Frederick J. Gilfillan and Charles O. Gilfillan that they were men of frugal and simple habits of life, with no undue indulgences or extravagances, considering their state of life. While it would have been more helpful to the resolution of these issues to have had more definite evidence as to their yearly expenditures, so as to arrive at some specific ratio between income and expenditures, there is sufficient evidence to determine that their mode of living and sphere of activities in relation to their independent means were such as to conclude that the possibility of invasion at the time of the testatrix' death was remote.[7]

As to Kingsland-Smith the evidence is not so impressive. While it is conceded that his support and main-

---

4. Lucas v. Mercantile Trust Co., 43 F.2d 39, 43. See also Blodget v. Delaney, 1 Cir., 201 F.2d 589.

5. Treasury Regulations 105, Section 81.46 (a). Commissioner of Internal Revenue v. Estate of Sternberger, supra [75 S.Ct. 236], clearly demonstrates that the Ithaca case is sound law, for the Court says:
"Where the amount has been determinable, the deduction has, with equal propriety, been allowed where the designated charity has been sure to benefit from it [citing Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647]."

6. In Berry v. Kuhl, 7 Cir., 174 F.2d 565, 568, the Court said:
" * * * We do not accept the Collector's construction that the plaintiff for any reason whatever could obtain funds for her support and maintenance, meaning, as we understand it, that she could raise her standard of living arbitrarily, or perhaps give her property away or waste it, and recoup from the principal of the trust. A more justifiable construction is that the testator intended the plaintiff to enjoy for her life at least the standard of living she enjoyed at the time of his death, and to permit recourse to the trust principal only in the event the return from her own large estate, as well as the income of the trust dwindled until that living standard could no longer be maintained therefrom. * * * "

7. First Nat. Bank of Birmingham, Ala., v. Snead, 5 Cir., 24 F.2d 186; Commissioner of Internal Revenue v. Bank of America Nat. Trust & Savings Ass'n, 9 Cir., 133 F.2d 753, 754.

tenance were achieved within the income available to him, it is the ratio of reserves against future contingencies which controls the problem. The Court is not persuaded that plaintiffs have sustained the burden of proof as to Kingsland-Smith.

In view of the foregoing, therefore, the Court concludes that the ruling of the Commissioner in not allowing a deduction based on the life expectancies of Frederick J. Gilfillan and Charles O. Gilfillan is in error. The deduction is allowed.

The ruling of the Commissioner in not allowing a deduction based on the life expectancy of Kingsland-Smith is adopted.

Plaintiffs may submit findings of fact, conclusions of law, order for and form of judgment consistent with the foregoing.

Both parties may have exceptions.