[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 00-15807

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 8, 2006
THOMAS K. KAHN
CLERK

D.C. Docket No. 96-00097-3-CV-DF

JOHN WASHINGTON HIGHTOWER,

Petitioner-Appellant,

versus

WILLIAM TERRY,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(August 8, 2006)**

**ON REMAND FROM THE UNITED STATES SUPREME COURT**

Before TJOFLAT, ANDERSON and WILSON, Circuit Judges.

TJOFLAT, Circuit Judge:

Petitioner John Washington Hightower is a Georgia prison inmate awaiting execution for murder.[1]  On August 6, 1999, the United States District Court for the Middle District of Georgia denied his application for writ of habeas corpus under 28 U.S.C. § 2254, and, on April 12, 2004, we affirmed its decision.  Hightower v. Schofield, 365 F.3d 1008 (11th Cir. 2005).[2]  Hightower thereafter petitioned the Supreme Court for certiorari review.  One of the issues his petition raised was whether the state trial court erred in rejecting his claim that the prosecutor's peremptory challenges of black jurors violated the Batson rule.  See Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).[3]  The Court granted Hightower's petition, vacated our judgment, and remanded the case "for further consideration in light of" Miller-El v. Dretke, 545 U.S. U.S. ___, 125 S.

_____

[1]  Hightower was convicted in 1988 of murdering his wife and two step-daughters the year before.  He was sentenced to death for each killing.

[2]  Our opinion in Hightower describes Hightower's criminal acts and the procedural history of the case – in state and federal court.

[3]  In Batson, the Supreme Court held that the Equal Protection Clause of the 14th Amendment forbad the State from exercising peremptory strikes in a racially discriminatory manner during jury selection in a criminal prosecution.  The Court established a three-part mechanism for establishing such discrimination, which the Court has summarized as follows:

> Under our Batson jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a raceneutral explanation (step two).  If a raceneutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful discrimination.

Purkett v. Elem, 514 U.S. 765, 767, 115 S. Ct. 1769, 1770-71, 131 L. Ed. 2d 834 (1995).

2

Ct. 2317, 162 L. Ed. 2d 196 (2005). Hightower v. Schofield, 125 S. Ct. 2929, 2929-30, 162 L. Ed. 2d 863 (2005). We conclude that Miller-El does not counsel a decision contrary the one we reached in Hightower v. Schofield, and therefore adhere to that decision.

Why Miller-El does not control our decision becomes clear when one considers how Miller-El reached the Supreme Court and how Hightower v. Schofield came to us. In Miller-El, after the Texas Court of Criminal Appeals affirmed the trial court's determination that the prosecutor's peremptory challenges of black jurors were not racially motivated, Miller-El petitioned the United States District Court for the Southern District of Texas for habeas relief – to review the court of criminal appeals' Batson decision.[4] Miller-El, 125 S. Ct. at 2323. Instead of requesting the district court to review that decision on the basis of the record created before the Texas trial judge, Miller-El asked the court to augment that record to consider other evidence, including juror questionnaires and juror information cards. Id. at 2334 n.15. The State had no objection; the district court[5] therefore convened an evidentiary hearing to consider the additional

---

[4] Miller-El's petition sought relief on other constitutional claims as well. Miller-El, 125 S. Ct. at 2323. None are relevant here.

[5] The district court referred Miller-El's petition to a magistrate judge. After hearing the petitioner's claims, the magistrate judge issued a report and recommendation, recommending that the district court deny relief. Miller-El v. Johnson, No. Civ. 3:96-CV-1992-H, slip. op. at 1

3

evidence.  Id.  The court rejected Miller-El's Batson claim, choosing to defer to

"the experience of the trial court judge in evaluating the demeanor of each juror

and the prosecutor in determining purposeful discrimination."  Miller-El v.

Johnson, No. Civ. 3:96-CV-1992-H, slip. op. at 2 (N.D. Tex. 2000) (mem.)

(unpublished).  Miller-El appealed, and the Fifth Circuit affirmed.  Miller-El v.

Dretke, 361 F.3d 849, 862 (5th Cir. 2004).  Of relevance to the case before us, the

court of appeals rejected the petitioner's arguments that "the . . . similarity

between non-black venire members who were not struck by the prosecution and

six blacks who were" and the prosecutor's "disparate questioning with respect to

venire members' views on the death penalty and their ability to impose the

minimum punishment" constituted circumstantial evidence of the prosecutor's

intent to discriminate against the black members on account of their race.  Id. at

854-55.

The Supreme Court disagreed with the Fifth Circuit's assessment of the

evidence contained in the record, i.e., the record before the Texas trial judge and

the evidence Miller-El presented to the district judge with the State's consent; the

Court concluded that "when the evidence on the issues [the petitioner] raised is

_____

(N.D. Tex. 2000) (mem.) (unpublished).  The court adopted the magistrate judge's
recommendations and findings, with modifications not relevant here.  Id. at 2.

4

viewed cumulatively its direction is too powerful to conclude anything but [racial] discrimination." Miller-El, 125 S. Ct. at 2339.

In the case at hand, we did not decide Hightower's Batson claim on the basis of an augmented record, as the district court, the court of appeals, and the Supreme Court did in Miller-El; rather, we were, and are post-Miller-El, limited to the evidentiary record developed in the state trial court during jury selection and the trial court's ruling,[6] Hightower's and the State's briefs to the Supreme Court of Georgia (with respect to the Batson claim), and that court's opinion (again, with respect to the Batson claim).

The procedural history of this case is illustrative. After the Georgia Supreme Court affirmed his convictions and death sentences, Hightower petitioned the state superior court for a writ of habeas corpus. Among his claims was the Batson claim he had presented to the supreme court in appealing his convictions. The superior court declined to entertain the Batson claim, citing Gunter v. Hickman, 256 Ga. 315, 348 S.E. 2d 644 (Ga. 1986), which held that issues raised in a defendant's direct appeal of his conviction cannot be relitigated

---

[6] In Miller-El, the Court, addressing the propriety – under 28 U.S.C. § 2254(d)(2) – of considering evidence not presented to the trial judge when ruling on the petitioner's Batson objection, stated that it was reaching no decision about whether the limitation on evidence in § 2254(d)(2) is waiveable. Miller-El, 125 S. Ct. at 2334 n.15. Section 2254(d)(2) instructs federal habeas courts to consider only "the evidence presented in the State court proceeding," i.e., the proceeding in which the Batson objection is raised.

5

on collateral attack, in a habeas corpus proceeding, see Gunter 256 Ga. at 316, 348 S.E. 2d at 644. After the superior court denied relief (on all of the petition's claims), the Georgia Supreme Court denied Hightower's application for probable cause to appeal, and the Supreme Court denied his petition for a writ of certiorari, Hightower v. Thomas, 515 U.S. 1162, 115 S. Ct. 2618, 132 L. Ed. 2d 860 (1995).

Having exhausted his state remedies, Hightower filed the instant habeas petition. The petition contained several claims, including the Batson claim now under consideration pursuant to the Supreme Court's mandate. In his petition and supporting memoranda, Hightower presented his Batson claim as he had presented it earlier in his brief to the Georgia Supreme Court on direct appeal, but he added an argument he had omitted from his brief to the supreme court. He contended that if the district court compared the prosecutor's questions to the white jurors with those put to the black jurors, or vice versa, and the respective jurors' answers to those questions, it would become apparent that the prosecutor, in exercising his peremptory challenges, was discriminating against the black jurors because of their race. The district court ignored this additional argument; it denied Hightower's Batson claim with these words:

> Petitioner has easily satisfied the first two prongs of his prima facie burden under Batson; the only disputed issue is whether the totality of the circumstances raised an inference that the prosecutor peremptorily

6

struck certain jurors because of their race. The trial court, having the best opportunity to view the prosecutor's demeanor and determine his credibility, found the prosecutor's explanations to be credible. The trial court also found there to be a race-neutral basis for all of the prosecutor's peremptory challenges of black prospective jurors. The Georgia Supreme Court affirmed the trial court's evaluation. This Court cannot say that the Georgia Supreme Court's determination was unreasonable or contrary to Batson or any other Supreme Court case within the meaning of the [Antiterrorism and Effective Death Penalty Act]. Accordingly, Petitioner is not entitled to relief on this basis.[7]

We analyzed Hightower's Batson claim in the same fashion, and concluded, as the district court did, that "Hightower never provided the [state trial] court with any evidence tending to discredit the persuasiveness of the prosecutor's stated reasons for striking black jurors."[8] Hightower v. Schofield, 365 F.3d at 1035.

---

[7] In determining whether the Georgia Supreme Court's rejection of Hightower's Batson claim should be sustained, the district court focused on what was before the Georgia Supreme Court. In other words, to the extent that Hightower's petition contained an argument that Hightower did not present to that court, the district court ignored the argument. The Rules Governing Section 2254 Cases in the United States District Courts accommodate this policy of limiting the district court's examination of the state high court's decision to what was before the high court. If the district court orders the State to respond to a habeas petition, Rule 5(c) requires the State to attach to its answer "parts of the transcript that the [State] considers relevant." Where, as here, a Batson claim is involved, the State must attach the transcript of the portions of the trial dealing with jury selection (and the Batson objection). The State provided the entire transcript of the jury selection in this case. Rule 5(d) also requires the State to attach to its answer the briefs the petitioner and the State submitted to the state appellate court, and that court's "opinions and dispositive orders" relating to the petitioner's claim(s). The State provided the district court with these materials in this case. In sum, the district court, in examining, and denying, Hightower's Batson claim, relied on transcript of the jury selection, the parties' briefs to the Georgia Supreme Court, and that court's dispositive opinion.

[8] The only evidence Hightower attempted to present to the trial court in support of his Batson objection came in the form of a newspaper article, which purportedly showed that the prosecutor had authored a memorandum detailing a scheme to exclude black persons from juries. The trial court excluded the newspaper article from the record, on the ground that it had not been

7

Hightower contends that <u>Miller-El</u> required the district court, and this court, to entertain the argument he presented to the Georgia Supreme Court as well as the additional argument presented to the district court – that the comparison mentioned above of the prosecutor's handling of the white and black jurors compels the inference that the prosecutor exercised his peremptory challenges on racial grounds. In effect, he wants to re-brief his appeal to the Georgia Supreme Court. We assume that he intended to do just that when he included his <u>Batson</u> claim in his habeas petition to the state superior court. The superior court rejected his attempt; the supreme court had adjudicated the claim, and state procedural law precluded him from relitigating it on collateral attack. The Georgia Supreme Court effectively agreed when it denied Hightower's application for probable cause to appeal.

The net effect of these rulings is that if Hightower wants the federal courts to entertain an argument he could have made in the Georgia Supreme Court but did not, he must establish cause for his counsel's failure to present the argument and resulting prejudice. <u>See</u> <u>Francis v. Henderson</u>, 425 U.S. 536, 542, 96 S. Ct. 1708, 1711, 48 L. Ed. 2d 149 (1976). He has demonstrated neither. Although his

---

authenticated. We are bound by that ruling, and, as such, we do not consider the article as part of the record before the Georgia courts for the purposes of our review under § 2254(d).

8

habeas petition to the district court alleges that his lawyers denied him effective assistance of counsel, it does not allege that counsel were ineffective in the Georgia Supreme Court for failing to advance his comparisons of black jurors struck by the prosecutor to white jurors accepted by the prosecutor.

We have considered Miller-El in the context of the instant case. We conclude that it does not change our disposition of Hightower's Batson claim.[9]

---

[9] Although Miller-El involved only the application of § 2254(d)(2), Miller-El, 125 S. Ct. at 2325, the dissent contends that we should grant Hightower's writ of habeas corpus on the ground that the Georgia courts' rejection of Hightower's Batson claim constituted a decision "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law" under § 2254(d)(1). See post, at __. The dissent argues that the state courts rendered such a decision because the trial court, and the Georgia Supreme Court on appeal, failed to carry out Batson's third step in that they failed to find credible the prosecutor's race-neutral explanations for striking black jurors. See post, at __; see also Rice v. Collins, ___ U.S. ___, ___, 126 S. Ct. 969, 974, 163 L. Ed. 2d 824 (2006) ("Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. This final step involves evaluating the persuasiveness of the justification proffered by the prosecutor . . . ." (citations and internal quotation marks omitted)). In so doing, the dissent focuses on the trial court's language in overruling Hightower's Batson objection, in which it stated only that, "as to each individual strike, the State has presented an articulable nonrace related reason for striking the prospective juror."

The dissent fails to recognize, however, that a trial court's dispositive ruling may contain implicit findings, which, though unstated, are necessary to that ruling. See United States v. $242,484.00, 389 F.3d 1149, 1154 (11th Cir. 2004) (en banc) ("[W]e and other federal appellate courts have "inferred from a district court's explicit factual findings and conclusion implied factual findings that are consistent with the its judgment although unstated."); see also 9A Charles Alan Wright & Arthur Miller, Federal Practice and Procedure, § 2579 (2d ed. 1995) ("In some cases if the court fails to make a finding on a particular fact it has been assumed . . . that it impliedly made a finding consistent with its general finding."). In such cases, we make "the common sense judgment that material factual issues were resolved by the [trial] court in favor of the judgment when it was reasonable for that court to [have] do[ne] so in light of the evidence." $242,484.00 at 1154-55. We have invoked (albeit tacitly) this principle in two Batson appeals, United States v. Cure, 996 F.2d 1136 (11th Cir. 1993), and United States v. David, 844 F.2d 767 (11th Cir. 1988), in which we upheld a district court's overruling of a Batson objection even though the district court did not explicitly find the prosecutor's race-neutral explanations to be

Our opinion in <u>Hightower v. Schofield</u> is accordingly reinstated.

       SO ORDERED.

---

credible.  <u>See</u> <u>Cure</u>, 996 F.2d at 1138-39; <u>David</u>, 844 F.2d at 769.

       In this case, the trial court, after assuming that Hightower had made out a prima facie case of racial discrimination, expressly found that the prosecutor had provided an "articulable, nonrace related reason" for each strike, and overruled Hightower's <u>Batson</u> objection.  The trial court's overruling of Hightower's <u>Batson</u> objection would have defied logic had the court disbelieved the prosecutor's race-neutral explanations.  We may therefore make "the common sense judgment" – in light of defense counsel's failure to rebut the prosecutor's explanations and the trial court's ultimate ruling – that the trial court implicitly found the prosecutor's race-neutral explanations to be credible, thereby completing step three of the <u>Batson</u> inquiry.

WILSON, Circuit Judge, dissenting:

I dissent from the order reinstating our previous opinion because this case, even more than *Miller-El v. Dretke*, 545 U.S. 231, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005), compels a finding that *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), was violated. *Miller-El* came to the Supreme Court on review "following the Texas trial court's prior determination of fact that the State's race-neutral explanations [for striking black veniremembers] were true." 545 U.S. at ___, 125 S. Ct. at 2325. The trial court in *Miller-El* specifically found that the prosecutor's justifications for striking black veniremembers were "completely credible [and] sufficient" to support a finding of "no purposeful discrimination." 545 U.S. at ___, 125 S. Ct. at 2323. The Supreme Court, reviewing the case under the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), stated that "Miller-El may obtain relief only by showing the Texas conclusion to be 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Id.* at ___, 125 S. Ct. at 2325 (quoting 28 U.S.C. § 2254(d)(2)). To prevail, Miller-El was required to prove "by clear and convincing evidence" that the factual determination was unreasonable. *Id.*; 28 U.S.C. § 2254.

11

Miller-El had to overcome a difficult burden (clear and convincing evidence); Hightower, on the other hand, does not. In Hightower's case, the trial court merely found that the prosecutor's justifications were "articulable" and "nonrace related" and never touched on the credibility of those statements. The Georgia courts never made factual determinations regarding the plausibility of the proffered justifications because they never applied the final step of *Batson*. Thus, the Georgia courts rendered a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). In light of the Georgia courts' error and of the evidence presented to them, I would grant Hightower's habeas petition.

## I. The Georgia courts failed to apply *Batson's* third step.

When we initially decided this case, I concurred with the result but expressed reservations about the state courts' application of *Batson*. *See Hightower v. Schofield*, 365 F.3d 1008, 1041 (2004) (*"Hightower I"*) (Wilson, J., concurring). As I stated in my concurrence, it appeared that the state trial court and the Georgia Supreme Court failed to properly apply *Batson's* third step by concluding their analysis at the end of the second step. *Id.* at 1042.

A *Batson* challenge requires a three-step inquiry. *Rice v. Collins*, __ U.S. __, __, 126 S. Ct. 969, 973, 163 L. Ed. 2d 824 (2006). "First, the trial court must

12

determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question." *Id.* (citations omitted). The second step requires evaluating the explanation on its face – "so long as the reason is not inherently discriminatory, it suffices." *Id.* Third, the trial court must "assess the plausibility of that reason in light of all evidence with a bearing on it." *Miller-El*, 545 U.S. at ___, 125 S. Ct. 2331. "This final step involves evaluating 'the persuasiveness of the justification' proffered by the prosecutor . . . ." *Rice*, ___ U.S. at ___, 126 S. Ct. at 974 (quoting *Purkett v. Elem*, 514 U.S. 765, 768, 115 S. Ct. 1769, 1771, 131 L. Ed. 2d 834 (1995) (per curiam)). The Georgia courts did not apply *Batson's* third step.

The trial court made explicit determinations with regard to only the first two steps.[1] The trial court asked the prosecutor, Joseph Briley, about each struck black veniremember, starting with Ricky Thomas. After Briley offered his justification, the trial court immediately stated, without asking for the defendant's input, "Mr.

---

[1] The trial court found that Hightower failed to establish a prima facie case of discrimination. That determination is erroneous. *See Hightower I*, 365 F.3d at 1043 (Wilson, J., concurring). Both the majority, here, and the Georgia Supreme Court assumed for purposes of analysis that Hightower established a prima facie case of discrimination.

13

Briley, I find that is an articulable reason the State has stated for striking Ricky Thomas and is not race related." The trial court then proceeded to ask about the next potential juror. Again after Briley's explanation, the trial court, without pausing, found that "the State has stated an articulable reason for striking Lucious Boswell and the reason is not race related." The trial court and Briley repeated this sequence for each of the six struck black veniremembers. Finally, after hearing all the prosecutor's reasons, the court stated, "I find that the defendants have failed to establish a prima facie case of discrimination on the part of the district attorney. I further find that as to each individual strike, the State has presented an articulable, nonrace related reason for striking the prospective juror." *The trial court never made a finding that these reasons were credible and never addressed "the persuasiveness of the justification[s]." Purkett*, 514 U.S. at 768, 115 S. Ct. at 1771.

The Georgia Supreme Court also failed to reach *Batson's* final step. Applying a clearly erroneous standard and assuming that Hightower had established a prima facie case, the Georgia Supreme Court affirmed the trial court's determination that the prosecutor's reasons for striking veniremembers were race-neutral. The language used in the Georgia Supreme Court's opinion suggests that once a prosecutor has articulated reasons for his challenges, a court's

14

finding that those reasons are race-neutral is sufficient to end the *Batson* inquiry.[2]

The Georgia Supreme Court appears to have been evaluating not whether

Hightower had met his burden of establishing purposeful discrimination, but

merely whether the prosecutor's proffered reasons for the strikes were

race-neutral.

The majority says that the trial court *implicitly* reached the final step. *Ante*,

__ n.9. I disagree. Implicit findings must be "reasonable in light of the record

evidence." *United States v. $242,484.00*, 389 F.3d 1149, 1154-55. The majority

does not evaluate the record to determine whether its implicit findings are

reasonable. As I explain below, the record fails to support a finding that the

---

[2] The Georgia Supreme Court's entire discussion of Hightower's *Batson* claim is as follows:

> The defendant contends the prosecution was guilty of racial discrimination. The prosecutor used only seven of his authorized 10 peremptory strikes. He used six of those seven strikes against black prospective jurors. The record shows that at least two black prospective jurors were struck by the defendant after having been accepted by the prosecutor. The prosecutor explained his peremptory challenges. Four of the challenged prospective jurors were closely related to persons convicted of serious felonies. The other two were conscientiously opposed to the death penalty, although not to the extent they were excused for cause. The trial court found that the prosecutor had articulated legitimate non-racial reasons for his challenges. Even assuming the defendant made out a prima facie case, the trial court's determination is not clearly erroneous.

*Hightower v. State*, 259 Ga. 770, 773, 386 S.E.2d 509, 512 (1989) (citations omitted). The Georgia Supreme Court used the words "legitimate" and "non-racial" when paraphrasing the trial court's findings regarding to the prosecutor's proffered reasons, but the trial court stated that for each struck veniremember, "the State [] presented an *articulable, nonrace related* reason." Importantly, the Georgia Supreme Court merely affirmed the trial court's findings, which did not include findings as to the plausibility of the prosecutor's proffered reasons.

15

prosecutor's reasons were credible.

The conclusion here is inescapable: By rejecting Hightower's *Batson* claim merely because the prosecutor's justifications were "articulable" and "nonrace related," the Georgia courts' adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of," *Batson*.[3] § 2254(d)(1).

## II. The proffered reasons were pretextual.

Having re-considered my pre-*Miller-El* concurrence, I am now persuaded that had the Georgia courts engaged in all three of *Batson's* steps, they in all likelihood would have found a *Batson* violation.[4] Here, the trial court had before it the number of peremptory strikes used to remove black veniremembers, the voir dire answers of all the veniremembers, the prosecutor's proffered reasons for striking certain veniremembers, the defendant's representations about the

---

[3] This case is distinguishable from *Atwater v. Crosby*, 11th Cir. 2006, ___ F.3d ___ (No. 03-16259, June 12, 2006). In *Atwater*, we held that generally a defendant must present some evidence or argument of comparability at the time that the *Batson* challenge is made in order to rely upon that argument in habeas proceedings. *Id.* However, in *Atwater*, the trial court "went beyond a mere finding that the state articulated a race neutral reason for the strike." *Id.* "The trial judge upheld the peremptory strike after agreeing that [the juror] exhibited some difficulty with her responses to the prosecution question." In so doing, "the third step of the *Batson* analysis was touched." *Id.* Here, the judge merely found, for every struck black veniremember, that Briley had given an "articulable" and "nonrace related" justification for the strike–never venturing beyond *Batson's* second step requiring a clearly articulated, race-neutral justification.

[4] "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v. Union Planters Nat. Bank & Trust Co.*, 335 U.S. 595, 600, 69 S. Ct. 290, 293, 93 L. Ed. 259 (1949) (Frankfurter, J., dissenting).

16

prosecutor's history of discrimination in jury selection, and the prosecutor's response to the accusations.[5]

Because the Georgia courts never assessed Briley's credibility regarding his use of peremptory strikes, we have no factual finding to which to defer, and can look to the record to determine whether it supports the proffered justifications. *See Miller-El*, 545 U.S. at ___, 125 S. Ct. at 2323, 2326-30 (where the state courts

---

[5] The defense attorney made the following statement, among others, in support of Hightower's *Batson* challenge:

[Of the seven peremptory strikes, Briley] has used six of those strikes to strike blacks. . . . Mr. Briley has in the past shown a bent and scheme to keep down the low number of blacks on either the grand jury or regular panels. . . . He has purposely excluded blacks so that Mr. Hightower will not get a fair and impartial hearing on this case and this matter.

Your Honor, I have here a copy of the *Fulton Daily Reporter* which was on Wednesday, March 30, 1988, where we got headlines, "Does County Plan To Discriminate, high court hears jury panel." This was regarding the case of the *State v. Amadeo* which has gone up to the Georgia Supreme Court. I will make a quote here from the U.S. Supreme Court Justice John Paul Stevens. "The evidence disclosed is the intentional program of rigging the jury by the prosecutor's office." This arose out of a memo which has been attributed to Mr. Briley stating that there was a purpose and a plan to have a member [sic] number of blacks on the grand jury in Putnam County in order to have it just half the jury criteria for grand jury. . . . You are well acquainted with that case, Your Honor. We would say that this is the same circumstances [sic], the same sort of scheme that Mr. Briley was doing in this particular case. He is purposely using his strikes to provide for just the minimum amount of blacks, absolutely the minimum amount, but what he has done is prevented Mr. Hightower from getting a fair and impartial hearing.

Importantly, Briley, although disputing the memorandum's purpose, essentially admitted penning the memorandum when he responded, "Your Honor, insofar as the statements from the Daily Report and the statements from Justice Stevens, . . . I believe Justice O'Conner asked the defense lawyer . . . 'couldn't it have been that Mr. Briley was trying to get the matter improved and was telling them how few they could put on it, in the jury box.' So, Your Honor, it is a matter of which direction you look at this case . . . ."

17

and the Supreme Court looked to the voir dire record to determine whether the

proffered reasons were pretextual). "If a prosecutor's proffered reason for striking

a black panelist applies just as well to an otherwise-similar nonblack [panelist]

who is permitted to serve, that is evidence tending to prove purposeful

discrimination to be considered at *Batson's* third step." *Miller-El*, 545 U.S. at

___, 125 S. Ct. at 2325.[6] The record is replete with examples of veniremembers

who were struck arguably because of their race, but three strikes are especially

troubling, specifically the exercise of peremptory challenges to eliminate Thelma

Butler, Ricky Thomas, and Emerson Davis.

Briley claims that he struck Thelma Butler because he successfully

prosecuted her brother-in-law twelve years prior. He also claims that Butler was

somewhat hostile. From the record, it appears that Butler was an ideal juror for a

prosecutor seeking the death penalty. Butler felt that people tried for murder are

---

[6] The majority states that in order for us to consider Hightower's arguments comparing struck black veniremembers with non-challenged non-black veniremembers, "he must establish cause for his counsel's failure to present the argument [in state court] and resulting prejudice." Majority Op., at ___. To the extent that the majority holds that any part of Hightower's *Batson* claim procedurally defaulted, I disagree. No Georgia court has ever found any part of Hightower's *Batson* claim procedurally barred, nor did the majority mention this as a ground for denying relief in the prior vacated opinion. *See, generally, Hightower v. State*, 259 Ga. 770, 386 S.E.2d 509 (1989); *Hightower I*, 365 F.3d 1008 (2004). Furthermore, the comparative juror analysis is further evidence of a *Batson* violation that the trial court *could have* considered at *Batson's* third step, whether counsel made the argument or not. *See, e.g., Miller-El*, 545 U.S. at ___, 125 S. Ct. at 2325 (where comparative juror analysis was considered).

18

treated too leniently. She was strongly in favor of the death penalty. She felt that mitigating circumstances must be proven before she would consider imposing a life sentence. Her answers alone undermine the veracity of Briley's proffered justification, especially since he never questioned Butler about her brother-in-law. Even more striking is the fact that Briley declined to strike a non-black juror, Michael Hensler, who, himself, had been convicted of and imprisoned for voluntary manslaughter by Briley's office.

In another example, Ricky Thomas's father had been convicted of killing his mother. Because of this conviction and the fact that Thomas had lived with his father after his father's release, the prosecutor struck him speculating that Thomas may possibly identify his father's case with Hightower's. Yet, Thomas indicated that he was in favor of the death penalty, and that he did not even remember the circumstances surrounding his mother's killing because he was too young at the time. The prosecutor never questioned Thomas about his relationship with his father or the potential impact on his ability to decide the case fairly. Again, the pretext is more apparent when viewed in light of the fact that Hensler was not struck.

Emerson Davis was struck because the prosecutor claimed that Davis was somewhat opposed to the death penalty, more so than other veniremembers. Davis

never stated that he was opposed to the death penalty, but rather had to hear the case before imposing the penalty. The prosecutor mischaracterized his voir dire, thereby undermining a claim that the prosecutor's reason was race-neutral. In fact, Davis's views were in line with several non-black jurors[7] whom the prosecutor declined to challenge. If Davis was undesirable as compared to other veniremembers on the question about the death penalty, then the prosecutor would have used his remaining peremptory strikes to eliminate other veniremembers who gave similar answers. However, the non-black veniremembers who gave similar answers were not struck.

Viewing the evidence in its totality, including the "smoking gun" memorandum penned by Briley, it is clear that Briley's proffered justifications were pretextual.

### III. This case is factually on all fours with *Miller-El.*

The factual similarities between *Miller-El* and this case are extensive. In *Miller-El*, the prosecutors struck ten of the eleven qualified black veniremembers with peremptory challenges. 545 U.S. at ___, 125 S. Ct. at 2325. Here, Briley,

---

[7] These jurors include Merrick Carter, Rhonda Batchelor, Nellie Stapp, M. P. Ervin, Miriam Shatterly, and John Hutcheson.

20

used six of seven peremptory strikes to strike black veniremembers.[8]  In *Miller-El*, the prosecutor struck a black veniremember because the juror was "inclined" to favor rehabilitation, while non-black jurors, who expressed stronger beliefs in favor of rehabilitation, were not struck.  545 U.S. at ___, 125 S. Ct. at 2327-29. Here, Briley struck Davis, a black veniremember, because he was "somewhat opposed to the death penalty" as compared to other veniremembers, but did not strike non-black veniremembers, such as Carter, Shatterly, and others mentioned above, who expressed views similar to Davis's, and in some instances expressed views more equivocal than Davis's.

Further, in *Miller-El*, the prosecutor struck from the jury black veniremembers because they had relatives who were prosecuted by the D.A.'s office.  545 U.S. ___, 125 S. Ct at 2328.  The Court noted the prosecutor's failure to inquire into the details of the convictions and relationships as further evidence that the reason was a pretext.  *Id.*  Here, Briley struck four black veniremembers because they allegedly had relatives who were prosecuted by the D.A.'s office.[9]

---

[8]  In *Miller-El*, one black juror was allowed to serve.  545 U.S. at ___, 125 S. Ct. at 2325. Here, three black jurors served at trial.  This difference is unimportant, especially in light of Briley's memorandum.  A prosecutor using *any* of its peremptory challenge to eliminate a veniremember because of race runs afoul of the Equal Protection Clause.  *See Batson*, 476 U.S. at 98 n.22, 106 S. Ct. at 1724 n.22; *Cochran v. Herring*, 43 F.3d 1404, 1412 (11th Cir. 1995).

[9]  Briley struck Butler, Thomas, Lucious Boswell, and Mattie Harris.

21

Just as in *Miller-El*, Briley did not inquire into the details of these convictions and relationships. Briley also declined to challenge, Hensler, a non-black juror who *himself* had been prosecuted and convicted of voluntary manslaughter.

In *Miller-El*, the prosecutor, while stating the race-neutral reasons for the strikes, mischaracterized the voir dire testimony of some of the black veniremembers he struck. 545 U.S. at ___, 125 S. Ct at 2327. Similarly, Briley mischaracterized the testimony of Davis.

This case is a more factually compelling *Batson* violation than *Miller-El* because of Briley's personal history of past discrimination. The defendant in *Miller-El* demonstrated little, if any, past history of discrimination by the specific prosecutors involved in his case, relying mainly on a manual that instructed prosecutors to minimize the number of black jurors. The Supreme Court stated that this evidence confirmed its conclusion that the race-neutral reasons were pretextual. 545 U.S. at ___, 125 S. Ct at 2339. Here, Briley himself authored a memorandum that spelled out the scheme to limit the number of blacks in the jury pool. The Hightower's counsel argued that Briley had "in the past shown a bent and scheme to keep down the [] number of blacks" serving on jury panels, and claimed that Briley wrote a memorandum detailing a plan to limit the number of blacks on grand juries. Instead of denying involvement with the memorandum,

22

Briley responded to the accusations arguing that the memorandum could be viewed as an effort to improve matters.

Had the trial court delved into *Batson's* third step, this evidence alongside the other evidence would have cast grave doubt on the truthfulness of Briley's proffered reasons.

## IV. Conclusion

The Georgia courts made no determination as to whether the prosecutor's proffered justifications were pretextual. In finding no *Batson* violation, the state courts relied on the fact that the proffered justifications were "articulable" and "nonrace related." This is sufficient for *Batson's* second step, but not the third step which "involves evaluating the persuasiveness of the justification." *Rice*, ___ U.S. at ___, 126 S. Ct. at 974. We cannot presume that Briley's proffered justifications were truthful because the trial court never made that finding. After reviewing the evidence available to the trial court, I conclude that Briley's reasons were pretextual, and that *Batson* was violated. Accordingly, I would grant Hightower's writ of habeas corpus.

The Supreme Court vacated our prior decision and remanded this case "for further consideration in light of [*Miller-El*]." *Hightower v. Schofield*, __ U.S. __, __, 125 S. Ct. 2929, 2929-30, 162 L. Ed. 2d 863 (2005). Reinstating the prior

23

panel opinion violates the Supreme Court's express mandate.  Respectfully, I dissent.